PERRY F. THORNLEY v. THE STATE.

*No. 903.   Decided February 26th, 1896.*

*Motion for Rehearing Decided May 27th, 1896.*

1. **Passing Forged Instrument—Indictment Where Instrument is Beyond the Jurisdiction of the Court—Secondary Evidence.**

In forgery, the general rule, requiring the production of the forged instrument, is met by the fact that the forged instrument is not within reach of the process of the

court; and where the indictment, for uttering a forged instrument, alleged that it was lost or destroyed, or in the possession, etc., of defendant, and not within reach of the process of the court. Held: This was sufficient notice to defendant to produce the instrument, and upon his failure to do so, it was sufficient to admit secondary evidence of its contents.

2. **Same—Proof of Possession by Defendant of Other Forged Instruments —Charge of Court.**

On a trial for passing a forged instrument, where evidence was introduced tending to show that defendant was in possession of another forged instrument. Held: An omission in the charge to limit and restrict this evidence was not reversible error where the charge, when given, was not excepted to on that ground, and it is for the first time urged in this court, and it does not appear that the omission was calculated to injure the rights of the accused. (But, see below, contra paragraph 3, of this syllabus.—Reporter.)

ON MOTION FOR REHEARING.

3. **Same—Evidence as to Defendant's Possession of Other Forged Instruments—Charge Limiting and Restricting Same.**

. On a trial for passing a forged instrument, where testimony has been introduced showing that defendant had other alleged forged instruments in his possession, the failure of the court to limit and restrict the purposes for which such testimony could alone be considered by the jury is fundamental error, although the charge was not excepted to for such omission. Following, Burks v. State, 24 Tex. Crim. App., 326; and, Hennessy v. State, 23 Tex. Crim. App., 340.

4. **Evidence of Extraneous Crimes, to be Limited and Restricted by Charge, When.**

It is only necessary for the court to charge upon and limit the evidence, showing other extraneous crimes, where there is danger of a conviction for the offense not charged, or of an unwarranted use of such testimony to the prejudice of the defendant in the case in which he is being tried.

APPEAL from the District Court of Tarrant. Tried below before Hon. W. D. HARRIS.

Appeal from a conviction for passing a forged instrument; penalty, two years' imprisonment in the penitentiary.

It is charged in the indictment, that Perry F. Thornley did "unlawfully, knowingly and fraudulently pass as true to J. Lee Bryan a forged instrument in writing, and which instrument, in writing, is in the possession or power of the said Perry F. Thornley, or is lost or destroyed, and is not within the reach of the process of the court, and is not accessible to the grand jury, and which said instrument is in substance as follows, viz:

'DALLAS, TEXAS, 5–7, 1895. No. 103.

'NATIONAL EXCHANGE BANK OF DALLAS.

'Pay to Perry F. Thornley (M. M. Co.), or bearer, $23.50-100, twenty-three 50-100 dollars.

'J. E. HARPER.

'(CLARK & COURT'S LITH., GALVESTON.)'

"And which said instrument is endorsed upon the back thereof in substance as follows, viz:

'PERRY F. THORNLEY.'

"And which said instrument in writing the said Thornley then and there knew to be forged, and did then and there so pass the same as

true, with the intent to injure and defraud, and notice is hereby given the said Thornley to produce said instrument upon the trial of this cause, or secondary evidence will be used to prove its contents."

The main features of the testimony are substantially as follows: Bryan, testified: "I saw appellant about the 10th day of May, 1895, at the Hotel Worth, in Tarrant County, Texas, and he presented to me a check and asked me to cash it for him, which I did. The check was on a Dallas bank and signed, J. E. Harper, was endorsed Perry F. Thornley and was for about twenty-three dollars. I saw the check again after it was returned from Dallas marked forgery. After the check was returned from Dallas I took it to Mr. Robert Orr, Assistant County Attorney for Tarrant County, and swore out a warrant for the defendant, charging him with forgery. A day or two after the check was presented to me, Mr. H. O. Bowen, who is now one of the attorneys for the defendant in this case, called on me and asked for the check and he and I went together to the County Attorney's office, and I asked for and obtained the check and asked that the cases that I had filed against the defendant be dismissed and I understood they were dismissed. I then delivered the checks to Mr. Bowen.

Bowen, testified: "I paid off and took up two check from J. Lee Bryan, in Fort Worth, Texas, some time in May, 1895. I paid Bryan the amount the checks called for. I was acting as the friend of the defendant's family; I knew them in South Carolina. I undertook to settle the check matter with Mr. Bryan without any instructions from defendant or his father. I was employed as an attorney in the case June 9th, 1895. The checks I received from Bryan I returned to defendant's brother soon after I received them in May, as vouchers to show the use I had made of the money placed to my credit by him. The check signed J. E. Harper, which I got from Bryan, was in the possession of defendant's father in Fort Worth at the time of defendant's trial on the charge of forgery on June 24th, 1895.

"After said trial defendant's father went to Sherman and remained there about two weeks, and then went back to his home in South Carolina, and took the J. E. Harper check with him; defendant's father is now in South Carolina. I wrote to defendant's brother in South Carolina to send this check to me to be used on this trial, and am expecting it to be sent. I did not expect to be employed as an attorney at the time I took up the checks from Bryan, because at that time I did not think the boy would be prosecuted. Mr. Bryan had the complaint dismissed at the time I paid him the money and took up the checks, and I did not learn that the defendant had been indicted by the grand jury in Tarrant County until after the checks had been sent to his brother in South Carolina. I have not seen the checks since they were sent to John Thornley, the defendant's brother, by mail; they have not been in my possession since then; they have not been in my possession since I have been employed in this case. At the time I took up the checks from Mr. Bryan, the warrants for defendant, on the complaints sworn out by

Bryan, were in the hands of the sheriff of Grayson County. I wrote a telegram to the sheriff of Grayson County asking him not to execute the warrants against defendant, and the sheriff of Tarrant County signed it, and it was sent immediately."

Robert Orr, testified, that he was Assistant County Attorney of Tarrant County last May; that some time in May Bryan came to his office and swore out a complaint against the defendant, charging him with forgery of the check set out in the indictment in this case; that at that time he made a copy of the check presented to him by Bryan, and the check set out in the indictment in this case is the exact copy of the check that Mr. Bryan brought him; that he made a copy of it in the complaint that he had with him on the witness stand; that he compared the copy with the check and compared the copy with the indictment, and that he knows that they are exactly alike.

Harper, testified, that he lived in Dallas, and was engaged in the drug business, and was so engaged in May, 1895; one of the bank officers at Dallas brought him a check signed J. E. Harper, for $23.50, which he thought was payable to the order of Perry F. Thornley, or M. M. Co., about the middle of last May, and asked him if the signature to the same was genuine; the signature to the check was not his signature, and he had not given anybody authority to sign his name thereto. He never did, at any time, give any check to appellant, nor authorize any check to be given to him; that he never knew or saw appellant before he was arrested in this case. C. N. Hanna brought a similar check to him, and at the time he brought it, witness thought it was the same check that the bank officer had brought, but afterwards learned that it was a different check. There was another man by the name of J. E. Harper living in Dallas a year or two ago. Witness heard of him, but did not know him. Witness got some of his mail and opened it through mistake; it was a letter from his wife, and witness is a single man. Witness did not know whether this J. E. Harper was in Dallas, Texas, at the time he was testifying or not.

Hanna, testified: That he lived in Dallas, that he has known defendant about a year. Witness was the proprietor of the Globe news stand at the St. James Hotel, in that city. Appellant came to witness in the early part of May, 1895, and borrowed $3 from him and deposited a check purporting to be signed by J. E. Harper, as collateral for the loan. Witness afterwards took the check to Harper, the witness in this case, and he said that it was not his signature. Witness did not know who took up the check. The man paid $3 and witness gave him the check.

When the State offered in evidence a copy of the forged instrument and sought to introduce secondary evidence of the contents of the original forged instrument, defendant objected, because a sufficient predicate had not been laid for the introduction of secondary evidence, which objections were overruled by the court.

*Bowen & Creager* and *Hazelwood & Smith*, for appellant.—No suffi-
cient predicate was laid for the introduction of secondary evidence of the
contents of the original check alleged to have been forged.   1 Greenl.
Ev., § 566. Vandergriff v. Piercy, 59 Texas, 371; U. S. v. Ryburn, 6
Pet., 352; Olive v. Morgan, 28 S. W. Rep., 572; Haun v. State, 13
Tex. Crim. App,, 385.

The State cannot acquiesce in placing the best evidence out of its reach
and then take advantage of its absence to produce secondary evidence.
3 Rice, Ev., §§ 28-30; Jernigan v. State, 31 Ala., 58.   The court erred
in admitting in evidence the passing of other forged instruments than
the one charged in the indictment and in failing to limit the same and
instruct the jury as to the purpose for which they could consider this
evidence.   Burks v. State, 24 Tex. Crim. App., 330; Kelly v. State,
18 Tex. Crim. App., 262; Holmes v. State, 20 Tex. Crim. App., 509;
Davidson v. State, 22 Tex. Crim. App,, 382; Alexander v. State, 21
Tex. Crim. App., 407; Reno v. State, 25 Tex. Crim. App., 110; May-
field v. State, 23 Tex. Crim. App., 645.

On the motion for rehearing, the following additional authorities were
cited on this last proposition, and upon the proposition that it was fun-
damental error for the court in the charge to fail to limit and restrict the
purpose of such evidence.   Maines v. State, 23 Tex. Crim. App., 576;
Barnes v. State, 28 Tex. Crim. App.,30; Carter v. State, 23 Tex. Crim.
App., 508; House v. State, 16 Tex. Crim. App., 32; Barton v. State,
28 Tex. Crim. App., 484; Washington v. State, 23 Tex. Crim. App.,
338; Higgenbotham v. State, 24 Tex. Crim. App., 505; Taylor v. State,
22 Tex. Crim. App., 545; Hennessey v. State, 23 Tex. Crim. App.,
340.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HURT, PRESIDING JUDGE.—Conviction for passing a forged instru-
ment.   Punishment assessed at two years' confinement in the peniten-
tiary.   It appears, from the record, that the appellant was tried for
forging the instrument in question on the 24th day of June, 1895, in the
Forty-eighth Judicial District Court (Tarrant County).   At that time
the instrument alleged to have been forged was in the possession of the
father of the appellant, and was used upon the trial of the forgery case.
After that trial, the father left Texas, and went to South Carolina,
carrying with him the forged instrument.   The indictment in this case
was presented into the District Court of the Seventeenth Judicial
District (Tarrant·County), on June 26th, 1895.   From the testimony, it
appears that the instrument was then in the possession of the father of
the appellant.   The indictment in this case alleges that said instrument
was "in the possession or power of the said Perry F. Thornley, or is
lost or destroyed, and is not within the reach of the process of the court,
and not accessible to the grand jury."   Said indictment gives notice to
the appellant to produce the said original instrument upon the trial of

the case, or secondary evidence will be used to prove its contents. The indictment does not attempt to set out the instrument by its tenor, but its substance. Counsel for the appellant insists that the notice to produce the instrument was not sufficient. We suppose that the contention is that the party in possession of the instrument should have been summoned to subpœna duces tecum. This was impossible, for the instrument was in the possession of the father of the appellant, who was beyond the process of the court. The indictment alleges the fact that the said instrument was not within the reach of the process of the court, and the testimony for the appellant establishes the truth of this fact beyond any sort of question. This being the case, all that could have been done was done. It is impossible for the State to send to another State its process, and bring to this State the father of the appellant, or the instrument. Upon this subject Mr. Bishop says "that, before evidence of the forgery will be admitted at the trial, the forged instrument must be produced, or its nonproduction justified from necessity, as by showing that it is lost or destroyed, or not within the reach of the process of the court. The general rule requiring the instrument is met by the fact that the instrument was not within the reach of the process of the court." See, Volume 2, § 433. As before stated, the indictment does not attempt to set out the instrument by its tenor, but its substance. That being the case, it is altogether immaterial whether the word "or" appears before the words "M. M. Co." In this case, however, a copy of the instrument was made. This copy was introduced in evidence, and is correctly sworn to by two persons—one who made it, and the other who compared it. If the instrument had been set out by its tenor, this proof would amply sustain the indictment. It is contended, however, that there is no evidence in this record tending to establish the fact that the instrument was a forgery. We are of the opinion that there is ample proof of that fact, and that appellant knew it to be such when he uttered it. It is also contended, as there was evidence introduced tending to show that the appellant was in possession of another forged instrument, that, therefore, it was reversible error (whether excepted to or not) for the court to omit, in its charge, to limit that evidence to its proper office. This omission in the charge was not excepted to at the time, nor mentioned in the motion for a new trial. It is urged for the first time in this court. Notwithstanding this, if the omission was calculated to injure the rights of the accused, under all of the circumstances of the case, we would reverse the judgment. Now, if the court had charged the jury, as contended by the appellant, the charge would have told the jury that they could look to the evidence tending to show the other forgery for the purpose of determining the intent upon which the appellant acted in this case. There was no danger that the jury would convict the defendant on this trial of the other forgery. By such a charge their attention, let it be shaped as it may, would have been specially called to a very strong criminative fact in this case. We are of opinion that this omission, under the circumstances of this case,

was not at all calculated to injure the accused.  Counsel for appellant insist that there was error in permitting J. E. Harper to testify that he had not signed the note, etc., thus proving its forgery.  The objection was that the indictment had not alleged that J. E. Harper had signed the note.  This is a prosecution for passing a forged instrument, and, under such a prosecution, these allegations are not necessary.  See, Willson's Crim. Forms, No. 311, for passing and attempting to pass as true a forged instrument.  2 Bishop's Crim. Proc., § 447.  We find no error in the judgment which requires a reversal thereof, and it is therefore affirmed.

*Affirmed.*

DAVIDSON, Judge, absent.

---

## ON MOTION FOR REHEARING.

HURT, PRESIDING JUDGE.—This case comes before us on motion for rehearing on the part of the appellant, the case having been affirmed at the Dallas term.  Appellant insists that this case should be reconsidered, and a rehearing granted, because this court was in error in not holding that it was fundamental error because the court failed to instruct the jury as to the purpose for which they should consider the testimony introduced before them in regard to the passing by appellant of another forged instrument, and in this connection cites us to a number of authorities bearing upon this point.  The other alleged forged instrument, which was introduced in evidence, was similar in form, and for the same amount, and the evidence tended to show was forged by appellant.  We have examined the authorities referred to, and they indicate, with but few exceptions, an unbroken line of decisions to the effect that, when evidence is adduced, on the trial of a case against a defendant, tending to show the commission of another crime by him, it is the duty of the court, whether asked or not, to properly instruct the jury with reference to the purposes and object of such testimony.  The exceptions to this rule, when examined, will be found to recognize the general rule, and to be predicated upon some peculiarity in the particular case.  See, Reno v. State, 25 Tex. Crim. App., 110; Barnes v. State, 28 Tex. Crim. App., 30; Carter v. State, 23 Tex. Crim. App., 508; Mayfield v. State, 23 Tex. Crim. App., 645; Alexander v. State, 21 Tex. Crim. App., 407; Holmes v. State, 20 Tex. Crim. App., 509; Kelley v. State, 18 Tex. Crim. App., 262; House v. State, 16 Tex. Crim. App., 32; Barton v. State, 28 Tex. Crim. App., 484; Washington v. State, 23 Tex. Crim. App., 338; Maines v. State, 23 Tex. Crim. App., 576; Davidson v. State, 22 Tex. Crim. App., 382; Higgenbotham v. State, 24 Tex. Crim. App., 505.  This very question came before this court in Burks v. State, 24 Tex. Crim. App., 326; and in that case the court used the following language: "Upon the trial the State proved, not only the attempt to pass the forged instrument to the party alleged in the indictment, but also that the defendant attempted to pass the said instrument on the

same day, but at a different time and place, to another person. This evidence was admissible to prove the defendant's fraudulent intent with respect to the attempt for which he was on trial. But the court, in its charge to the jury, failed to restrict said evidence to the purpose for which it was admitted, by proper instructions to the jury, which omission is reversible error, although not excepted to." And, also see, Hennessy v. State, 23 Tex. Crim. App., 340. Upon the former hearing of this case we were of the opinion that it came within the line of decisions which hold it unnecessary to charge upon and limit the effect of extraneous crimes when admitted as testimony; and, not coming within that category, and being of a criminative nature, the court should not have charged with reference to the matter, as it would have had a tendency to call the attention of the jury to this circumstance, so as to affect the appellant adversely. Upon a closer examination of the record and the authorities, we believe that we were wrong, and that the case comes strictly under the authority of the Hennessy and Burks cases, supra, and that line of authorities. As we understand the law with reference to the admission of extraneous crimes, whenever they are admitted in evidence, and the effect has a tendency or might bring about a conviction for the extraneous crime, the court must limit the effect of the testimony in his charge to the jury. And this is the case, also, where the testimony, being admitted, has a tendency to injure the rights of the appellant in any other direction. The testimony must be limited. But where the testimony is simply used to prove up the case as res gestæ, or to prove any other fact that forms a part and parcel of the case, so as to show the defendant's guilt, and there is no probability of the jury convicting for the offense not charged, it is not necessary to limit the effect of the testimony. In fact, it is only necessary for the court to charge upon and limit said testimony when there is danger of a conviction for the offense not charged, or of an unwarranted use of the testimony to the prejudice of the defendant in the case in which he is being tried. For the reasons stated, a rehearing is granted, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*