ROBERT WRIGHT v. THE STATE.

No. 4590. Decided March 20, 1909.

Rehearing Denied June 9, 1909.

**1.—Murder—Evidence—Threats—Alibi.**

Upon trial for murder there was no error in admitting testimony with reference to a conversation defendant had with witness two days before the killing in which defendant said he was leaving home or he would have to kill someone or be killed, and witness would hear from him later, either as a threat or of fabricating an alibi.

**2.—Same—Jury and Jury Law—Peremptory Challenge.**

Where upon trial for murder defendant claimed that he was forced to exhaust his peremptory challenges upon a certain juror, and the record showed that the juror was in all respects qualified there was no error.

**3.—Same—Evidence—Articles Found.**

Upon trial for murder there was no error in admitting testimony that a cartridge was found in defendant's possession similar to the one by which deceased was killed.

**4.—Same—Evidence—Impeachment.**

Where upon trial for murder where the defendant claimed an alibi there was no error in admitting testimony showing that defendant robbed a store near the scene of the homicide, to connect him with the offense and to show that his alibi was a fabrication; and the court was not required to limit such testimony in his charge.

**5.—Same—Charge of Court—Alibi.**

Where upon trial for murder the defense was an alibi and the defendant did not request an instruction on the subject of alibi, but the court fully charged on reasonable doubt and circumstantial evidence, there was no error. Following Jones v. State, 53 Texas Crim. Rep., 131.

**6.—Same—Statutes Construed.**

Article 723 Code Criminal Procedure is a remedial statute and does not change the rule on the law of alibi as adjudicated in the decisions of the court before the passage of said article, and does not institute a more rigorous rule than existed aforetime. Following Jones v. State, 53 Texas Crim. Rep., 131.

**7.—Same—Sufficiency of the Evidence.**

Where upon trial for murder the evidence circumstantially showed a cold blooded murder, a conviction inflicting the death penalty will not be disturbed.

Appeal from the District Court of Sabine. Tried below before the Hon. W. B. Powell.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*J. W. Minton, J. H. McGown* and *Tom C. Davis*, for appellant.— Cited cases in the opinion.

*F. J. McCord*, Assistant Attorney-General, for the State.—Cited cases in the opinion.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death.

The substance of the evidence, in reference to the homicide, is as follows: The State's case was made out by circumstantial evidence. The theory of the State being that the defendant made preparations to leave home on Wednesday before the killing on Saturday night, and his purpose in advertising that fact was to account for his absence at the time of the killing. The deceased and the defendant were brothers-in-law, and lived within three hundred yards of each other, and between the villages of Geneva and Bronson, in the county of Sabine. The record does not disclose how far this place was from the county seat of Sabine County, but it lay on the road and was about twelve miles from San Augustine and thirty miles from the town of Center, in Shelby County, Center being north. On the night of the 20th day of June, 1908, the same being Saturday night, the deceased, who was a married man, having a wife and infant child, was preparing to retire; the deceased had stepped out, came back in the house and sat down on a cot, leaning his head upon the window sill. His wife was leaning over on the cot resting on her elbow, nursing her infant; the infant lying on the cot between her and her husband. While the parties were in this condition a gun was fired from the outside and the deceased fell over dead, being shot in the head. The night was very dark and the wife of deceased saw the form of a man pass close by a honeysuckle bush in the yard, but she was unable to recognize who the party was, or whether he was a white man or a negro. The mother of the deceased, who lived with them, on Wednesday preceding this had gone to stay with the wife of the defendant at his request, while he was going, as he said, on a trip to Van Zandt County to be gone several days. The case was made up on the part of the State by a great many circumstances. The defendant was last seen on Thursday evening before the killing Saturday night in the village of Bronson, about three miles from the scene of the killing. On Thursday night a person was seen to get off the train some six miles north of Bronson, whom a witness identified as being the defendant. From Thursday night until Sunday, about one o'clock, there is a total absence of any testimony that defendant was seen by a living soul, until he turned up in the town of Center about one o'clock, walking, very wet with perspiration and very dusty. No train arrived at Center that day, and when there accosted and informed of the death of his brother-in-law, Johnson, he seemed surprised, and stated that he could not account for it, for he had left home on Saturday before and everything was all right. He there procured a buggy and went back home, arriving there about 12 o'clock that night, and shortly after his arrival he was arrested for this offense.

Bill of exceptions No. 1 shows the State introduced Mack Ellason, who testified that he was in the town of Bronson, in Sabine County, on Thursday before A. M. Johnson was killed on Saturday following. On

Thursday evening he saw the defendant, Wright, in Bronson, and there had a conversation with him; that he in said conversation asked the defendant why he was dressed up so; that the defendant in said conversation said that he was leaving home, or he would have to kill some one or be killed, and he would hear from him later. Appellant objected to this testimony on the ground that same was irrelevant and immaterial; second, because the same could not be construed as a threat against the deceased, Johnson; third, because there is nothing in the evidence of the witness to show that the said statement had reference to the deceased, Johnson. The bill is approved with this qualification: "The evidence in the case shows that, at the time the conversation was had between the witness Mack Ellison and the defendant, the defendant had, on that day in Bronson, and just a short while before the conversation, purchased a number of buck-shot shells that corresponded with the wads found where the deceased was killed, and like the shells poured out of the grip by the defendant at the lot gate on the following Saturday night; also that the defendant had previously told Ben Nobles that he got his gun once, when he saw the deceased going across the field, and tried to head him off, and he would have fixed him then, but when he got there deceased had got up the hill near his house, and he did not bother him. He also told Bob Nobles that he would kill the deceased if it was not for his mother; he hated to do it on her account. The first exception of appellant, that the testimony is irrelevant and immaterial, is not well taken, since, unless the testimony is irrelevant and immaterial under any theory of the case, these objections are too general under the rules of this court. The second objection, that the testimony is not a threat, would not render the testimony inadmissible, since, if the testimony is not a threat, then it is clearly admissible to show that appellant was fabricating, or attempting to fabricate, an alibi for a homicide that he subsequently committed; and if the statement had no reference to deceased, it certainly would become harmless to appellant. But we think the testimony was admissible as going to show a fabrication on the part of appellant, or a desire to fabricate an alibi for a contemplated murder.

Bill of exceptions No. 2 complains that appellant was forced to exhaust his peremptory challenges upon the juror Smith. The explanation of the court clearly disposes of this contention, and shows that the juror was in all respects qualified.

Bill No. 3 complains that the State was permitted to introduce Randolph Nobles, Rolly Afair, George Matthews and J. F. Jones, and that each of them testified that on Sunday night, after A. M. Johnson was killed, appellant was arrested at his home, which was about one-quarter of a mile from where the deceased was killed, for the killing of deceased, and after being arrested he was carried by the officer to the place of the deceased, where he had left the buggy in front of the lot gate; that the appellant, while under arrest and in custody, took from the hind part of the buggy a small grip, and carried it from the buggy

to the fence, which was two or three steps, and hung it up. The witness Jones testified that, before he hung up the grip, he poured something out of the grip on the ground on the opposite side of the fence, and then hung the grip on a plow handle which was on the fence. Appellant's objection to this testimony is that defendant was under arrest for the killing of Johnson, the deceased; and that no act or declaration done or made by the defendant while under arrest can be used against him, unless he has been warned before, and the matter reduced to writing and signed by him; that the defendant had not been warned. The court appends this statement to the bill: "That the witness, R. A. Noble, testified that under the grip, where the witness Jones testified the defendant poured out the things out of the grip, he, Noble, found the grip hanging on the plow handle on Monday morning, and under the grip, where the witness Jones saw the defendant pour the things from the grip, he (Noble) found three pocket knives, some pencils, cigars, a handkerchief, and a buck-shot cartridge, the wad in the end of which was like the wad found where the deceased was killed, and the cartridge was like the cartridge purchased by the defendant in Bronson. This act on the part of the defendant was voluntarily made." We think this testimony was admissible. See Leeper & Powell v. State, 29 Texas Crim. App., 63. Certainly, if appellant is found in possession, recently after a homicide, of matters that go to demonstrate his guilt or connect him with the homicide, it is always permissible to prove said facts, although appellant may be under arrest at the time the articles are found, and although the articles may be taken off the person of the appellant.

Bill of exception No. 4 complains that the State was permitted to prove by the witness Ernest Alford that he lived in the town of Geneva, Sabine County, at the time A. M. Johnson, the deceased, was killed, and that he was selling merchandise at said time, and was the owner of a storehouse and a stock of goods in said town at that time; that on Friday night, before A. M. Johnson was killed on Saturday night, his storehouse was broken into by some one by prizing open one of the windows of the storehouse, and that there were stolen from his storehouse four pocket knives and one box of cigars. The witness testified that on Monday or Tuesday, after deceased was killed, Dock Dorsey brought to him at Geneva a small grip, and in the grip were four pocket knives and a cigar, which the witness identified as the knives and the kind of cigars that were stolen from his house the Friday night before. Appellant objected to this testimony on the ground that same was immaterial and irrelevant; that the defendant was on trial for killing of A. M. Johnson, and not for the theft or burglary of Alford's house, which objections the court overruled. The bill was approved with this qualification: "That the witness Noble testified that on Monday morning, after Johnson was killed on Saturday night, he saw a small grip hanging on a plow handle near A. M. Johnson's lot gate, at the place where the witnesses Randolph Noble, Raleigh Adair, George

Matthews and J. F. Jones testified they saw the defendant hang a grip, and the witness Noble had further testified that he found on the ground three pocket knives, a cigar and a buck-shot cartridge, at the place where the witness Jones testified that the defendant had emptied the contents of the grip, and the witness Noble had further testified that he had picked up the things found on the ground, and had placed them in the grip, and gave the grip to Dock Dorsey, with instructions to carry the grip and the contents to Ernest Alford, which was done." This testimony was admissible to refute appellant's contention that he was not in the neighborhood at the time the homicide was committed. In other words, it was admissible to identify appellant as being the guilty participant in this homicide. It is a well-known rule that evidence going to show system or intent, or that is part and parcel of a crime then on trial, is always admissible testimony. See Leeper & Powell v. State, *supra;* Walker v. State, 7 Texas Crim. App., 245; State v. Graham, 74 N. C., 646; Williams v. State, 27 Texas Crim. App., 466; Preston v. State, 8 Texas Crim. App., 30. In addition to the above, we will state the record shows that appellant told his mother-in-law, on Wednesday before the killing on Saturday night, that he had been to Geneva that day, and received a telegram, or a boy met, and gave him a telegram that called him to Van Zandt County; that he had a suit there, and his bond had been forfeited, and that he had to go there to raise the forfeit. Appellant told the witness Horn that he had a telephone message delivered to him at Geneva from San Augustine, telling him to come to Van Zandt to stand trial for theft. Various other circumstances in the record show that appellant was attempting to fabricate the defense of alibi, as suggested above, and this testimony was admissible to identify and connect him with the commission of the crime. Certainly, if appellant robbed a store in the neighborhood on Friday night, or if he had in his possession property taken from a store Friday night, the killing having occurred the following Saturday night, it was a strong circumstance to refute the idea that he was in another and different county at the time the homicide was committed.

Appellant further insists, in his motion for a new trial, that the court should have charged on the issue of alibi. The court charged on reasonable doubt properly, and also on circumstantial evidence, and told the jury that they had to believe, and that the circumstances must lead and direct and point to the defendant, and no one else, or they would acquit, and that if they had a reasonable doubt on this point they would acquit. Appellant requested no instruction on the subject of alibi, but merely complains of the failure to so charge in his motion for a new trial. An omission of the trial court to charge with reference to alibi is not such error as will ordinarily cause reversal, unless the charge was excepted to on account of such omission, or unless special instructions on that subject be requested and refused. See Rider v. State, 26 Texas Crim. App., 334; Ayres v. State, 21 Texas Crim.

App., 399; Clark v. State, 18 Texas Crim. App., 467; Davis v. State, 14 Texas Crim. App., 645. This was the rule prior to the adoption of article 723 of the Code of Criminal Procedure. In the case of Jones v. State, 53 Texas Crim. Rep., 131, we held that article 723 of the Code of Criminal Procedure is a remedial statute, and its purpose was to prevent reversals for mere technical errors, and does not change the rule as to charges on the law of alibi as adjudicated in the decisions of the courts before the passage of said article, and does not institute a more rigorous or technical rule than existed aforetime. It will be seen that the above cited cases were rendered prior to the passage of article 723. The Jones case, in passing upon the insistence that the court erred in refusing to charge on alibi, which is barely reserved in motion for a new trial, held that the same rule existed since the passage of article 723 as it did aforetime.

We have carefully reviewed all of appellant's contentions in this case. The evidence, though circumstantial, is in all things sufficient to justify the verdict of the jury. Appellant cruelly, cowardly and wantonly murdered his brother-in-law by shooting him with a gun while he sat unconscious of danger in his own home. The killing occurred at night. The circumstances irresistably lead to the conclusion and exclude every other reasonable hypothesis than that of the guilt of the appellant. This being true, we hold that the evidence is altogether sufficient.

Finding no error in the record, the judgment is in all things affirmed.

*Affirmed.*

### ON REHEARING.

#### June 9, 1909.

BROOKS, JUDGE.—This case was affirmed on a previous day of this term, and now comes before us on motion for rehearing.

The first ground of the motion insists the court erred in holding that the trial court did not err in failing to charge on the issue of alibi. We do not think there was any error in this, after a careful review anew of the record. The trial court told the jury that the evidence must exclude every other reasonable hypothesis than that appellant was the party who committed the homicide.

The second ground of the motion complains that this court was in error when it held that it was not necessary for the trial court to limit evidence going to show a cotemporaneous burglary as a circumstance to show that he was in the immediate neighborhood of the homicide at the time it was committed. The authorities are not uniform on the question as to whether this character of testimony should be limited or not. The general rule, however, in reference to these matters, is laid down by this court in the case of Sue v. State, 52 Texas Crim. Rep., 122, which rule is as follows: "When testimony, in a trial for murder, could not have been legitimately or rationally used for any

other purpose than that for which it was used, there was no error in . failing to limit the same to that purpose." This decision cites the following authorities: Wilson v. State, 37 Texas Crim. Rep., 373; Moseley v. State, 36 Texas Crim. Rep., 578; Winfrey v. State, 41 Texas Crim. Rep., 538; 56 S. W. Rep., 919; Blanco v. State, 57 S. W. Rep., 828. The same rule is recognized in the case of Long v. State, 114 S. W. Rep., 632, cited by appellant. The case of Watson v. Commonwealth, 116 S. W. Rep., 287, by the Court of Appeals of Kentucky, cited by appellant, holds that, on a trial for murder in a local option county, it is error to admit evidence as to a sale of liquor by the accused to the deceased and his companion shortly before the homicide, and as to a conviction of the accused sometime before the homicide for selling liquor without license, where such offenses were not connected with the homicide, and neither supplied a motive for it or threw any light upon the question whether it was necessary. This rule is recognized in all the courts, and is not in conflict with the authorities above cited. The case of Thornley v. State, 36 Texas Crim. Rep., 118; 34 S. W. Rep., 264, cited by appellant in his motion for rehearing, was a case where the appellant was on trial for passing a forged instrument, and evidence was introduced that defendant had in his possession another forged instrument. It was held that it was not reversible error for the court to fail to limit the effect of such evidence, since a charge thereon would have called undue attention thereto. We have reviewed all the authorities cited by appellant, and none support the contention that the failure of the court to limit the fact of the burglary to the purpose for which it was intended was error. In fact, as stated in the original opinion, we can not see how the jury could have appropriated the fact of the burglary to any other purpose than to show that appellant was in the neighborhood, close by the scene of the homicide, a few hours at most from the hour that the assassination was committed. For the court to have limited the effect of said evidence, as stated in the Thornley case, *supra,* would have given undue prominence to the burglary, and served to injure appellant, instead of assisting in his defense on a charge of murder. Appellant in this case was charged with murder—not burglary—and it is utterly irrational to presume that a sworn jury would disregard their oaths and convict a man of murder on the theory that they thought he had committed burglary. Certainly, it was admissible, as appellant concedes, to introduce the possession of the stolen goods that were identified and found in possession of appellant, as a circumstance—and a cogent one at that—to absolutely demonstrate the proximity of appellant to the scene of the assassination. Now, for the court to have told the jury that it limited the evidence to that purpose, and that it was admitted for that purpose alone, would serve to emphasize the probative force of the evidence, instead of shielding appellant from his supposed conviction for burglary.

The magnitude of the penalty in this case has compelled us to write somewhat at length on this matter, but we have carefully reviewed all

the evidence and complaints of appellant, and must say that this record conclusively demonstrates that appellant is guilty of an assassination, and well deserves the punishment awarded him by the jury. The motion for rehearing is therefore overruled.

*Overruled*