OSCAR SUMNER V. THE STATE.

No. 18890.   Delivered May 5, 1937.
Rehearing Granted November 24, 1937.
State's Rehearing Denied January 19, 1938.

502

The opinion states the case.

*Lockhart & Brown,* of Lubbock for appellant.

*Truett Smith,* Dist. Atty., of Tahoka, *Dayton Moses,* of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of cattle; punishment, two years in the penitentiary.

The count in the indictment which was submitted to the jury charged theft of cattle from V. M. Joiner, who was then and there holding same for Edwards & Edwards, who had ranches in Lynn County, Texas, Mr. Joiner being their foreman. The State introduced H. C. Reed, who testified that some time about the 8th of November, 1935, he went out to the ranch of this appellant, where he stayed some time. Among other incriminating testimony, he said that about two weeks after he went to the ranch this appellant and the father of witness began stealing cattle. The first time that he saw any of the T-Bar stolen cattle on the Sumner ranch was about November 15, 1935. The T-Bar cattle belonged to the Edwards. This witness was shown to be an accomplice in that he ate flesh of stolen animals, and the case was submitted to the jury on the law of circumstantial evidence. This witness testified that his father and this appellant appeared to be engaged in stealing cattle, which they butchered at night and the meat of which they sold. He said among the stolen cattle were some cattle of Mr. Brownfield, which were taken at a different time from those belonging to the Edwards, but were butchered and the meat, hides, heads, brands, etc., were disposed of the same way as were those of the Edwards cattle. This witness testified that his father and appellant would butcher the animals at night, and would cut the

brands out of the hides, and would chop up the heads, and cut off the tails and feet, and would throw these articles into a cistern on the ranch or into an earth tank also on the ranch, or would bury them around in different places near the barn, house, etc. Some time in January, 1936, appellant lost his ranch through some sort of court procedure and moved away from it. Other parties took charge of the ranch about the first of February, and immediately a search began of the premises, which resulted in locating a large number of mutilated hides with the brands cut out, and in some instances burned, the heads cut off as also were the feet and tails. These parties found in the cistern and in the earth tank, and buried in various places around the barn, lots, etc., a number of hides, brands, etc., of not only Edwards' cattle but also of Brownfield's cattle. In this connection it is important to state that appellant's defense upon the trial of this case was that during November and December, 1935, he was at his home in Amarillo, or in a hospital in Amarillo, and he was insane at the time. The State also introduced a witness who testified that in November he bought from the elder Reed and appellant certain beeves which they brought to his place already butchered, and which they hung up in witness' place.

The testimony of witness Reed, and also of the witness last mentioned, was objected to on the ground that it related to extraneous offenses and offenses committed at other and different times from that charged in the instant case.

We are not able to agree with appellant's contention found in either of the two bills of exceptions appearing in the record. There are exceptions to the general rule against proving extraneous crimes, which are as well recognized and settled as any other rule of procedure concerning evidence known to this court. Mr. Branch in Sec. 2347 of his Annotated P. C. enumerates the following instances in which proof of other offenses is admissible: (1) When such proof is a part of the res gestae of the alleged offense for which the accused is being tried; (2) when it tends to show intent when intent is an issue; (3) when it serves to prove identity when identity is an issue; (4) when the case is one on circumstantial evidence, and proof of the extraneous offenses connects or tends to connect the accused with the offense for which he is being tried; (5) when such proof tends to defeat the defensive theories in the case. We have examined not only the cases cited by Mr. Branch in support of the text above mentioned, but also many other cases, and later ones.

In Kelley v. State, 31 Texas Crim. Rep., 211, a case whose

facts showed that when the accused was arrested, a day or two subsequent to the alleged burglary, he was found in possession not only of property taken from the house for whose burglary he was on trial, but also property taken from another house burglarized the same night; and also in possession of property recently taken from still another house in another town. Judge Davidson, writing for the court, said that all this testimony was admissible, and a number of authorities were cited. The evidence relating to the burglary of a house in another town was held admissible as controverting and showing the falsity of the defensive theory advanced by the accused, who claimed that he came by that property honestly. Dawson v. State, 32 Texas Crim. Rep., 535, is a decision of like effect. Fielder v. State, 40 Texas Crim. Rep., 187, exhibits a case where a party of men was going through the country when arrested, and property was found in their possession stolen at various places during a period covering several days, and this court held admissible proof of the various burglaries. See, also, Camarillo v. State, 68 S. W. Rep., 795. In Bright v. State, 74 S. W. Rep., 912, Judge Davidson again writing, held admissible proof that in appellant's possession were found the fruits of several distinct burglaries, the propriety of such admission being based on the opinion in Kelley v. State, supra. In Penrice v. State, 105 S. W. Rep., 797, the same learned judge held admissible proof of the theft of another horse stolen on the same night as the one in the case on trial,—both horses being found in possession of appellant later. In that case the accused made an explanation of his possession of said horses consistent with his innocence, but it was held by this court that proof of his possession of the other horse was admissible to rebut his defensive explanation. Again in Johnson v. State, 52 Texas Crim. Rep., 201, the same great judge held that evidence of the finding of the fruits of two separate burglaries in possession of appellant was admissible upon the theory that this tended to connect appellant with the offense for which he was being tried, the case being one on circumstantial evidence.

For holdings same as in the cases above mentioned see Ware v. State, 36 Texas Crim. Rep., 599; Thompson v. State, 90 Texas Crim. Rep., 15; Mehlman v. State, 92 Texas Crim. Rep., 455; Hester v. State, 15 Texas Crim. App., 567; Simpson v. State, 81 Texas Crim. Rep., 389; Cannon v. State, 84 Texas Crim. Rep., 504; Mueller v. State, 85 Texas Crim. Rep., 346; Wilson v. State, 87 Texas Crim. Rep., 538; Miller v. State, 88 Texas Crim. Rep., 69; Thornton v. State, 80 Texas Crim. Rep., 64; Longoria

v. State, 80 Texas Crim. Rep., 123; Bateman v. State, 81 Texas Crim. Rep., 73; Wright v. State, 56 Texas Crim. Rep., 357, and many other authorities might be cited.

In line with the holdings of the cases above mentioned it appears clear that under more than one of the exceptions mentioned by Mr. Branch the testimony objected to was admissible. This was a case of circumstantial evidence, and the fact of finding in appellant's possession, or on his premises, the fruits of other crimes of similar character, committed in like manner,—the evidence of the commission of which was mixed and mingled with the evidence of the commission of the case on trial,—tended also strongly to destroy appellant's defensive theory. The evidence of all said crimes was found by parties searching appellant's premises at the time they found the hides, the burned brands, the cut off legs, feet and tails of the Edwards cattle. The fact that appellant was engaged in butchering and selling cattle in an ordinary and orderly way at the time referred to in said two bills of exceptions, in Lynn County, would also tend to rebut and overthrow the defensive theory that appellant was insane and in a hospital, or at his home in Potter County at the time these thefts were committed.

The cases cited by appellant in his able brief appear to differentiate themselves on their facts from the case here under consideration. It is a well settled rule in this State that proof of a separate, disconnected transaction is not admissible unless it comes within one of the exceptions above referred to. The cases mentioned in appellant's brief were held not to come within any of the exceptions.

Being unable to agree with appellant's contentions, and finding no error in the record, the judgment will be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant urges with much force that the trial court was in error in a charge given regarding the theft of cattle other than the one alleged in the indictment to have been stolen.

The objections to the court's charge were incorporated in the original transcript, but were in no way authenticated by the trial judge. However, by a supplemental transcript such authentication is shown, and at the time the original opinion was written such supplemental transcript must have escaped attention. In no other way can the omission to consider the serious

question raised by the instruction complained of be accounted for.

The count of the indictment under which conviction was had alleged the theft of one head of cattle from V. M. Joiner, who was holding it for C. O. Edwards and Crawford O. Edwards, the owners. The State proved the theft of some cattle from one Brownfield, and also theft of cattle from the two Edwards other than the one alleged in the indictment. As held in the original opinion such evidence, under the facts, appears to have been admissible.

Regarding the theft of other cattle the court charged as follows:

"In this case the State has introduced evidence that other cattle than the one alleged to have been taken on or about the 18th day of December, 1935, as set out in the second count of the indictment, were taken at about the same time and place. You are instructed that you can only consider such testimony for the purpose for which it was admitted; that is, to establish the identity in developing the res gestae of the alleged offense or to prove the guilt of the accused by circumstances connected with the theft, if any, or to show the intent with which the defendant acted with respect to the property for the theft of which he is now on trial, and you will consider it for no other purpose, for you cannot convict the defendant for the theft of any property other than that named in the second count of the indictment."

Appellant in writing presented the following specific objection to said instruction: "The defendant further excepts and objects to the ninth paragraph of the Court's main charge wherein the Court instructs the jury that they can consider the testimony with reference to the theft of other cattle than those named in the indictment for the purpose 'to show the intent with which the defendant acted with respect to the property for the theft of which he is now on trial,' for the reason that said instruction is upon the weight of the evidence and is in fact an instruction to the jury that the defendant did act with respect to the property for the theft of which he is now on trial; and they are to consider such testimony for the purpose of determining the intent with which he so acted, and such instruction is extremely prejudicial to the rights of the defendant."

In Davis v. State, 87 Texas Crim. Rep., 425, 222 S. W., 236, a charge in the exact language employed in the present case was condemned as being on the weight of the evidence. The charge there, however, told the jury: "If you believe there is evidence

tending to prove the theft of other property than that alleged in the indictment," etc., whereas, in the present case the court told the jury that: "In this case the State *has introduced evidence that other cattle* than the one alleged * * * in the indictment * * * *were taken* at about the same time and place," etc.

We quote from Branch's Ann. Tex. P. C., page 122: "Where defendant denies any criminal connection with other transactions introduced in evidence against him, the charge is on the weight of the evidence if it states that evidence has been introduced 'tending to prove another offense.' "

From page 123 we quote: "It is error to assume that other property was stolen, and to limit the effect of such assumption."

Many cases are noted by the author which support the quoted text.

Concededly not only the animal described in the indictment, but the others also were stolen by someone. One defense interposed was that appellant was not present at the time any of the cattle were taken, and the question of alibi was submitted to the jury. The instruction of the court that the jury could consider the other thefts "to show the intent with which the defendant acted with respect to the property for the theft of which he is now on trial" appears to be on the weight of the evidence in a case like this where appellant was denying connection with any of the property. Such a charge might have application in a case where accused admitted connection with the property for the theft of which he was on trial, but denied a criminal intent. However, where appellant denied any connection with the property alleged in the indictment to have been stolen and introduced witnesses to show that he was at some other place when the theft was committed it appears to have been improper for the court to tell the jury that the State had introduced evidence that other cattle had been taken, and that the jury could consider such evidence "to show the intent with which the defendant acted with respect to the property for the theft of which he is now on trial." The charge is subject to the criticism that it seems to assume that appellant was "acting" with regard to the animal charged to have been stolen.

We think the charge which required the jury to find want of consent of Joiner and the two Edwards *"or either of them,"* while not strictly accurate, could not have injured appellant in view of the fact that the record shows all three of the parties testified and all denied having given consent to the taking.

For the error discussed we feel constrained to grant appellant's motion for rehearing, set aside the judgment of affirm-

ance, and now direct that the judgment of the trial court be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

## ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In its motion for rehearing the State earnestly contends that we erred in our opinion on appellant's motion for rehearing in holding that the instruction limiting the use by the jury of evidence of thefts of cattle other than the one for which appellant was on trial was on the weight of the evidence.

The State parallels the charge given in the case of Mueller v. State, 85 Texas Crim. Rep., 346, 215 S. W., 93, with the one found in the present case. In appellant's motion for rehearing he paralleled the charge given in Davis v. State, 87 Texas Crim. Rep., 425, 222 S. W., 236, with the one here found. The three charges are practically identical, and we agree with counsel for the State that the opinion in Mueller's case holding the charge good, and in Davis' case holding it bad, cannot both be right and that one or the other should be overruled on the point mentioned. The Mueller opinion on rehearing was released on October 8, 1919, and that in Davis' case on May 26, 1920, only seven months later, without change in the personnel of the court in the meantime. There is one difference in the facts of the two cases in the following regard: Mueller defended on the ground that if the cattle for the theft of which he was on trial were stolen he was not present when it occurred, and proved by one Compton that the latter had raised the cattle and sold a part of them to him (Mueller), thereby admitting a connection with the cattle for the theft of which he was on trial, but asserting an innocent connection under a claimed purchase. That fact could readily have had weight with the court in holding the limiting charge not reversible because of the assumption therein of Mueller's connection with the cattle, where he through his own witnesses was asserting a connection by purchase. It would be vastly different where a charge assumed such connection in the face of a denial of any connection whatever. However, the fact mentioned does not in our judgment prevent the charge as worded in the Mueller case from being on the weight of the evidence as said identical charge was so held to be in the later Davis case.

We furthermore call attention to certain language found in the charge in both the cases mentioned, as well as in the present

case. The jury was told they might consider evidence of other thefts "to establish the identity in developing the res gestae of the alleged offense," which means exactly nothing. We presume the court intended to tell the jury that evidence of other thefts, if there was such evidence, might be used by them if it aided in establishing the identity of accused where identity was an issue, or that the evidence of other thefts, if there was such evidence, had been admitted in developing the res gestae of the offense for which accused was then on trial, but the words actually employed convey no meaning whatever, either to the jury or to anyone else. The charge seems to have been copied subsequently with all its defects unnoticed.

We observe that it would be a rare case where evidence of other offenses would become admissible under all exceptions permitting proof of extraneous crimes, and the limiting charge should be restricted to the particular exception under which the evidence did in fact become admissible.

A careful study of the limiting charge here given as set out in our opinion on appellant's motion for rehearing confirms us in the view that it is on the weight of the evidence as was held in Davis' case (supra), and that Mueller's case (supra) should be overruled on the point under consideration.

The State's motion for rehearing is in all things overruled.

*Overruled.*