### E. E. HOOTON v. THE STATE.

#### No. 4188.    Decided February 26, 1908.

**1.—Theft—Charge of Court.**

Where upon trial for theft, there was no evidence that the prosecutor threw his money around promiscuously in a bar room, there was no error in the court's failure to charge on such state of case.

**2.—Same—Charge of Court—Theft From the Person.**

Where upon trial for theft and theft from the person, the jury found the defendant guilty of theft, they thereby acquitted defendant of theft from the person; besides the testimony being wholly circumstantial and the precise means and methods of the taking not being shown, there was no error.

**3.—Same—Charge of Court—Definition of Offense—Weight of Evidence.**

Where upon trial for theft the court in the preliminary portion of his charge used the language that the property was taken from prosecutor's person, but applied the law correctly throughout, the charge was not on the weight of the evidence, and there was no error.

**4.—Same—Evidence—Identification.**

Upon trial for theft of money, there was no error to exhibit the stolen currency bills to the jury, while testimony was being introduced as to their identification, as the alleged stolen money.

**5.—Same—Evidence—Codefendant—Discretion of the Court.**

Upon trial for theft of money, there was no error in bringing into court defendant's codefendants for identification, at the request of the State's counsel, there being nothing in the record that such identification was collusive; this was a matter largely in the discretion of the court.

Appeal from the District Court of Dallam. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of theft; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Del W. Harrington* and *C. J. Carter,* for appellant.—On question of charge refused: Hierhalser v. State, 47 Texas Crim. Rep., 199; 11 Texas Ct. Rep., 725. On question of weight of evidence: Harris v. State, 3 Texas Ct. Rep., 586.

*F. J. McCord,* Assistant Attorney-General, and *Henry S. Bishop,* District Attorney, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Dallam County, Texas, for the offense of theft of property over the value of $50. The indictment contained four counts, charging the offense of ordinary theft from one Hoskinson; and contained a count also of theft from the person of said Hoskinson; the offense of theft from the person of the said Hoskinson so suddenly as not to allow time to make resistence; and the offense of robbery. The two last counts were expressly withdrawn from the consideration of the jury by the court in a charge, and the issues submitted to the jury were in respect to the charge of theft over the value of $50 and theft from the person. On the trial, appellant was convicted of theft on the first count, and his punishment assessed at two years confinement in the penitentiary. Appellant was originally jointly indicted with E. J. Felts, E. W. Felts and John Moody, but application for severance was granted and the case was tried against appellant separately.

The evidence shows briefly that about the 28th day of September, 1907, the witness, J. R. Hoskinson, came to the town of Dalhart, Texas, in Dallam County, from Fort Dodge, Kansas, arriving there early in the morning; that he soon afterwards went to the saloon of one Robert Dilsworth in said town, and during the day became very drunk. It was shown by all the testimony that the prosecuting witness, Hoskinson, had something like $100, mostly in currency, and that a large part of the money had been kept in a pocket-book, which was lost with the money but subsequently recovered and identified. It was shown by all the testimony that appellant was in the saloon a considerable portion of the time that Hoskinson was there; that sometime in the afternoon of that day, the witness, Dilsworth, searched Hoskinson, who had been seen with a considerable amount of money and found his pocket-book gone, and that he had on his person only 5 cents in money. Dilsworth testified that he had a conversation with appellant before he was put under arrest and before he had gone to the closet and found the pocket-book in question, in which he stated to him, "You got this old man's money, and I don't want anything like that to happen around my place, and if you will give it up there will be nothing said, or that it would go lighter with you, or there will be nothing to it, but I do not want

him to lose his money in my place; and this man (meaning appellant) twisted around and would not have anything to say, and then he went out and I went out there to the closet after the pocket-book." A witness named Powell testified that he had a conversation with the appellant just after the loss of the money; that he came into his place with two $20 bills in his hand and said, "I rolled a fellow up the street," and I said to him, "Red, you had better take that money back," and he said, "I am going to buy me a suit of clothes." And I said, "Are you crazy, do you want to break into the penitentiary?" This witness also testified, as follows: "This defendant said, 'I rolled a fellow up at Bob Dilworth's saloon,' and also told me where he had thrown a pocket-book. He said he had thrown the pocket-book into the water-closet back of Dilworth's saloon; he also told me he got a $120 off the party, and that he had given two other parties $40 a piece." This will be a sufficient statement of the facts to illustrate the legal questions arising on the trial.

1. By special charge No. 3 counsel for appellant requested the court to charge the jury, as follows: "If you believe from the evidence that the said J. R. Hoskinson threw his said money promiscuously about the bar and the room, to wit: in Bob Dilworth's saloon, and that the defendant took said money while it was so promiscuously strewn around said bar and room, then you will acquit the defendant." In support of this proposition counsel for appellant refers to the cases of Berry v. State, 8 Texas Crim. App., 515; Muly v. State, 26 Texas Crim. App., 274; Haynes v. State, 39 S. W. Rep., 106. We do not believe under the facts as here presented, that this charge should have been given. The only testimony that would tend, by any possible construction, to have justified the giving of this charge was the testimony of Wm. Lewis, a barkeeper at Dilworth's saloon, who testified that while Hoskinson was in the saloon and treating the crowd, that he had six $20 bills, and that he would just string them along the bar. This same witness, Lewis, testified that when Hoskinson was doing this, he told him to pick his money up and put it in his pocket, and that he took his money up and had it in one hand and his pocket-book in the other when he left and the other barkeeper came in. There is nothing in the evidence to suggest that at the time of the theft that the witness, Hoskinson, was throwing his money around promiscuously, and, we think, as applicable to the facts in evidence, there was no warrant in giving this charge.

2. Again, it is insisted that the court erred in instructing on the count in the indictment charging theft from the person for the reason, as presented, that there was no evidence justifying the submission of this issue, and the proposition submitted is that it was error for the court to charge upon a count in the indictment where the evidence does not sustain such count. It would perhaps be a sufficient answer to this assignment to say that the jury acquitted the appellant of this count—at least, they did not find him guilty on such count. In view,

however, of the fact of the drunken condition of the witness, Hoskinson, the testimony being wholly circumstantial, and the fact that the State was not able to show the precise means and method of the taking, it is not believed that the court erred in submitting the issue of theft from the person.

3. Complaint is made of the following portion of the court's charge: "Said property is alleged to have belonged to J. R. Hoskinson and was taken from his possession, without his consent, and with the intent of the defendant, E. E. Hooton, to deprive the owner of the value of the same and to appropriate it to his own use and benefit, and said offense is alleged to have been committed in the County of Dallam, and State of Texas, on or about the 28th day of September, 1907." It is urged that the words "was taken from his person without his consent, etc.," is a charge upon the weight of the evidence. An inspection of the charge shows that the instruction here complained of is contained in that part of the charge in which the nature and character of the offense with which appellant was charged appears, and not elsewhere in the charge. It is not believed that a fair construction of the charge taken altogether, nor a proper construction of the particular clause in question is susceptible of the construction, nor subject to the objection which appellant makes. The court in this paragraph tells the jury that it is alleged that said property belonged to Hoskinson, and the words, "was taken from his person," follows a statement that such was the allegation in the indictment. It seems to us that the jury could not have been misled or impressed by the court's charge that this was any comment upon the weight of the evidence, but that this part of the charge was designed and intended to inform them of the nature and character of the offense charged and its constituent elements. Charges should receive a fair and reasonable construction and should be tested with reference to the language used in its entirety and taken in its proper connection.

4. Complaint is made by appellant that the court erred in permitting evidence that certain $20 bills were found in possession of appellant and certain other persons claimed to be his confederates and that the court erred in permitting the introduction of such money. It is always permissible, as we understand, for the State to trace by positive or circumstantial evidence, the property alleged to have been stolen and exhibit same to the jury, unless it be in special cases, as bloody clothing, etc., where the introduction of same would serve no useful purpose and might by their nature and character inflame the minds of the jury. The prosecuting witness, Hoskinson, testified that the money shown to him in the courtroom on the trial was the same kind and denomination as that which was stolen from him. Again, the money exhibited to Hoskinson on the trial was identified by Hutton (the sheriff) as being the money found on appellant and his alleged confederates on the same day and a short time after the money was stolen. The amount of money found and the denomination of same closely corresponded with

the money which Hoskinson claimed was stolen from him. Besides this the pocket-book in which the said money had been kept was found by Dilswōrth in the place where appellant said he had thrown it and was definitely identified by the witness, Hoskinson, not only from its general appearance, but by the fact that it had a mutilated 1-cent stamp in it, and other articles clearly identified by him. Whether this was the identical money described in the indictment and whether it was the identical money stolen from the prosecuting witness was a question for the jury, the money having been identified as nearly positively as paper money can ordinarily be identified. All this evidence about the money, which was exhibited on the trial to the jury, was admissible in determining whether the money found on appellant and his alleged confederates, was the money mentioned in the indictment. This evidence was clearly admissible as a circumstance in the case. In this connection the State was permitted to show by the sheriff (Hutton), that the day he arrested appellant, he also searched John Moody (a codefendant in the case) and found in his room, stuck up under the wallpaper, a $20 bill. The record shows that Moody was with appellant and the other alleged confederates in the saloon when the money was exhibited by Hoskinson, and he was arrested soon after the discovery of the theft; and the finding of any stolen property of the kind named in the indictment soon after the commission of the theft was admissible in accounting for all the money stolen. In this connection it should be noted that neither the acts nor the declarations of Moody or any of the alleged confederates were offered or admitted in evidence against appellant, but merely the finding of bills of the same denomination in his possession. The money so found accounted for all the money stolen in amount and in character or denomination of bills; that is, it was shown that appellant had two $20 bills and the two Felts brothers had two and Moody, the other codefendant, had one in his room.

5. Complaint is also made that the court erred in permitting the codefendants, jointly charged with the appellant, to be brought from the jail for the purpose of enabling the witness, Lewis, to identify them. We gather from the record, indeed it is apparent, that the witness, Lewis, was not very well acquainted with these codefendants and that they were in jail. In this connection and condition of affairs, at the request of the district attorney and under the direction of the court, they were brought into court and were identified by the witness. We think it clearly permissible to prove by the witness, Lewis, who the persons are who are confederates with the party on trial, especially when they had been found in possession of the stolen property, or part of it, or property of the same character as in this case. There is nothing in the record suggesting that the identification by Lewis was collusive, or influenced by the production of the codefendants from the place from which they were brought. He seems to be a mature man and was not influenced, so far as the record shows, by the fact that appellant's codefendants were pointed out by the district attorney, but

his judgment and opinion of identification seems to have been based on his observation of these codefendants. It is not seen how else, since these codefendants were in jail, they could have been identified, unless the witness had been permitted to go to the jail to see them, which, if possible at all, would have been no less or more harmful than the means adopted by the court. This was a matter, in the nature of things, to be left to the discretion of the trial judge, and we cannot only see no abuse of it, but it seems to us to have been very reasonable and proper exercise of such discretion. The evidence, to our minds, shows conclusively the guilt of appellant, nor is there, as we believe, anything in the record to indicate that he has not had a fair and impartial trial. So believing, it must follow that the judgment of the court should be and the same is hereby in all things affirmed.

*Affirmed.*