### J. T. DOWNING v. THE STATE.

### No. 466. Decided March 8, 1911.

### Rehearing Denied April 19, 1911.

**1.—Perjury—Indictment—Materiality of Statement.**

Perjury may consist not only in false and corrupt testimony, relative to the main facts immediately at issue, but also in such testimony relative to material circumstances which tend to prove the issue, and irrespective of the truth or falsity of the main facts at issue. Following Bradbury v. State, 7 Texas Crim. App., 375.

**2.—Same—Case Stated—Sufficiency of Indictment.**

Where, upon trial of perjury, the indictment showed that the alleged perjury occurred in a civil suit involving the signature and endorsement of certain negotiable notes, and that defendant in such suit swore that one of the signatures of the makers of the notes had been signed at the time he purchased

same, and this fact was sought to be used by him as a circumstance that he was an innocent purchaser of said notes, which the indictment alleged was deliberate and wilfully false and assigned the perjury upon this fact, there was no error in overruling a motion to quash the indictment.

### 3.—Same—Evidence—Testimony in Civil Suit.

Upon trial of perjury growing out of a civil suit there was no error in permitting the State's witnesses, including the court stenographer, to testify as to the testimony of defendant in the trial of said civil suit upon which the perjury was based.

### 4.—Same—Evidence—Circumstances.

Where, upon trial of perjury growing out of a certain civil suit, in which the material issue was as to when the name of one of the makers was affixed to the notes involved in said civil suit, there was no error to admit in evidence all the testimony bearing upon the issue as to when said notes were signed by the alleged makers thereof.

### 5.—Same—Evidence—Pleadings in Civil Suit.

Upon trial of perjury growing out of the testimony given by defendant in a certain civil suit, there was no error in admitting in evidence the pleadings in said civil suit.

### 6.—Same—General Reputation of State's Witness—Reputation of Defendant's Witnesses.

Upon trial of perjury there was no error in admitting testimony attacking the general reputation of the defense witnesses for truth and veracity, but it was reversible error to permit the State to prove the good reputation for truth and veracity of some of its own witnesses, when no attack had been made thereon and thus to bolster up the State's case.

### 7.—Same—Evidence—Deed of Trust—Husband and Wife—Attorney and Client.

Upon trial of perjury, it was reversible error to compel the wife of the defendant, by subpoena duces tecum, to appear in the court and deliver a certain deed of trust which was involved in the trial of the case and introduce the same in evidence against the husband; and to compel defendant's attorney to answer certain questions with reference to said deed of trust and ascertain through him that the same was in possession of defendant's wife.

### 8.—Same—Evidence—Immaterial Matter Foreign to the Issue.

Upon trial of perjury it was improper to permit the State's counsel, by his interrogation of defendant's witnesses, to attack the reputation and character of a party who was not a witness in the case, and which matter had no bearing upon the question as to whether defendant gave the alleged false testimony in a certain civil case upon which the alleged perjury was based.

### 9.—Same—Hearsay Evidence.

Upon trial of perjury it was error to permit a State's witness to testify relative to the terms of the trade of cancellation of certain notes involved, of which the defendant had no knowledge at the time and was not present.

Appeal from the District Court of Potter. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of perjury; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*E. G. Senter* and *Reeder, Graham & Williams* and *C. A. Wright,* for appellant.—Upon question of insufficiency of indictment: Crow v. State, 49 Texas Crim. Rep., 103, 90 S. W. Rep., 650; Maroney v.

State, 78 S. W. Rep., 696; Brainerd v. Bute, 44 S. W. Rep., 575; Martin v. State, 33 Texas Crim. Rep., 317, 26 S. W. Rep., 400.

Upon question of permitting testimony of witnesses as to material issues made in the civil case: Foster v. State, 32 Texas Crim. Rep., 39; Washington v. State, 23 Texas Crim. App., 336; Stanley v. State, 48 Texas Crim. Rep., 565, 89 S. W. Rep., 829; Maroney v. State, 78 S. W. Rep., 696.

Upon question of admitting in evidence pleadings in civil case: Guajardo v. State, 24 Texas Crim. App., 603; Felsenthal v. State, 30 Texas Crim. App., 675; Clark v. State, 23 Texas Crim. App., 260; Stanley v. State, 48 Texas Crim. Rep., 565, 89 S. W. Rep., 829.

Upon question of admitting in evidence matters occurring not in the presence of defendant: Burke v. State, 15 Texas Crim. App., 156; Means v. State, 10 Texas Crim. App., 16; McInturf v. State, 20 Texas Crim. App., 336; Maines v. State, 23 Texas Crim. App., 568; Crook v. State, 27 Texas Crim. App., 198.

Upon question of bolstering up reputation of State's witnesses: McGrath v. State, 35 Texas Crim. Rep., 413, 34 S. W. Rep., 127.

On question of compelling wife of defendant and his attorney to give evidence against him: White's Code Crim. Procedure, article 774, section 983.

On question of argument of State's counsel: Burke v. State, 15 Texas Crim. App., 156; Means v. State, 10 Texas Crim. App., 16; Aud v. State, 36 Texas Crim. Rep., 76.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case the appellant was indicted, charged with the offense of perjury. Upon a trial he was convicted and sentenced to five years confinement in the penitentiary, hence this appeal.

In the record there are about fifty bills of exception. As several of them present matters which we think require a reversal of this case, we will not review each of the bills, but only such of them as might affect another trial.

1. The first bill complains of the action of the court in refusing to quash the indictment. It appears from the record that appellant, before maturity, purchased two negotiable notes from a man named Frank Adams. The notes were originally given to Neely and Stephens by J. B. Miller and Frank Adams as a consideration for the purchase of a stock of drugs. The trade was rescinded, and the notes surrendered by Neely and Stephens to Adams. Prior to their return to Adams, Neely and Stephens had made an effort to negotiate the notes and endorsed them. When the trade for the stock of drugs was canceled, and Adams received back the notes, Neely and Stephens did not cancel the endorsement, and Adams went to Amarillo from Texline and sold the notes to defendant. When Neely and Stephens

learned that defendant claimed to be an innocent purchaser of said notes, they brought suit against the defendant and Adams and Miller, alleging that defendant was not an innocent purchaser, but that he had entered into a conspiracy with Adams and Miller to claim to have purchased the notes and require them, as endorsers, to pay thém, praying that their endorsement of the notes be canceled, and that defendant be enjoined from selling said notes until their endorsement had been canceled. Upon a trial, defendant alleged that he was an innocent purchaser for value, and that at the time he purchased the notes the notes were signed by J. B. Miller alone, and in buying them from Adams he had no notice of any vice in the notes, and that Adams' name was signed to the notes at the time he purchased same at his (defendant's) request.

It might be conceded that insofar as the liability of Neely and Stephens as endorsers is concerned, it would be immaterial when Adams signed the notes, but when defendant alleges and relies on this as a circumstance to show that he was an innocent purchaser for value, it became a material fact in the trial of the civil cause. It is alleged that defendant testified in the trial of the civil cause that the name of Adams was not signed to the note as one of the original makers at the time he purchased them, but that Adams signed the notes as a joint maker at the time he purchased the notes. This statement is alleged to be false, and upon it the indictment for perjury is predicated. In Bradberry v. State, 7 Texas Crim. App., 375, the court says: "Perjury may consist not only in false and corrupt testimony, relative to the main fact immediately at issue, but also in such testimony relative to material circumstances which tend to prove the issue, and irrespective of the truth or falsity of the main fact at issue." The main issue was, of course, in the trial of the civil case, Was defendant Downing an innocent purchaser of the notes? The fact or circumstance of when Adams signed the notes was sought by defendant to be used as a fact and circumstance to prove that he was an innocent purchaser, and that fact was alleged and testified to for the sole purpose of tending to prove that he was an innocent purchaser. We are not passing on the fact as to when Adams signed the note, but only if the fact alleged and testified to was false, could perjury be assigned on that fact? We are of the opinion it could, and the court did not err in overruling the motion to quash. Davidson v. State, 22 Texas Crim. App., 381, and authorities there cited.

1. In a number of bills of excepton defendant excepts to the action of the court in permitting witnesses Boyce, Kendall and others, including the court stenographer, to testify as to the testimony of appellant on the trial of the civil suit. The perjury is based on what it is alleged that defendant testified in that suit, and it was permissible for the State to prove what defendant did testify in that suit on the point in issue. These bills present no error. Sisk v. State, 28 Texas Crim. App., 432.

3. Appellant also complains in several bills of exception that Oscar Calloway, J. S. Patrick, Stephens and others were permitted to testify that they had seen the notes purchased by defendant prior to the date of his purchase, and that Frank Adams' name was signed to the notes; also to the testimony of witnesses that they saw Adams sign the notes in an office in Paris, Texas, prior to their purchase by Downing, and prior to their endorsement by Neely and Stephens, and prior to the time they were delivered to Frank Adams. Any and all legal testimony was admissible to show when the notes were signed by Adams, as this was a material issue in this perjury case, and the court did not err in admitting this testimony.

4. Complaint is also made that the court erred in permitting the introduction of the pleadings in the civil suit in evidence. In a number of cases (Davidson v. State, 22 Texas Crim. App., 372, and others cited) these papers are held to be admissible as evidence, the court limiting by proper charge the purpose for which they may be considered by the jury. In the sixth paragraph of the court's charge this matter is controlled by the court.

5. Appellant also complains in bills of exception that the State was permitted to introduce evidence that the reputation of defendant and several of his witnesses for truth and veracity was bad. Defendant voluntarily took the stand in his own behalf, and the court did not err in permitting the State to make this proof. McFadden v. State, 28 Texas Crim. App., 241; Morales v. State, 36 Texas Crim. Rep., 234. However, the court not only permitted the State to prove the bad reputation of some of the defendant's witnesses, but also permitted the State to prove that the reputation of Stephens, Calloway, Patrick and other witnesses for the State, for truth and veracity, was good. In this the court erred. There had been no effort on the part of defendant to prove contradictory statements or that the reputation of the State's witnesses was not good. As said in the case of Rushing v. State, 25 Texas Crim. App., 607: "Mere conflict between evidence of a witness and that of other witnesses is not ground for admissibility of evidence of the reputation of the witness for truth and veracity." (See also Murphy v. State, 40 S. W. Rep., 978, and cases there cited.) In this case, admitting this testimony, over objection of defendant, was very harmful. A number of witnesses for defendant had testified that Adams signed the notes at the time defendant had sworn Adams signed them. Some of these witnesses the State was permitted to show that their reputation was bad for truth and veracity. This was legitimate, but then to take the witnesses for the State, who had sworn the note was signed at a different time, when no effort had been made to impeach them, and "bolster up" the State's case by proof that their reputation for truth and veracity is good, is never permissible. Mere conflict between testimony of one witness and others will not authorize introduction of supporting proof. Payne v. State, 40 Texas Crim.

Rep., 290; Texas & Pac. Ry. v. Raney, 86 Texas, 363; Harris v. State, 45 S. W. Rep., 714.

6. Appellant also complains of the action of the court in regard to a certain deed of trust. It appears that at the time the notes were given Miller gave a deed of trust on land in Titus County to secure the payment of the notes. Of course, when defendant purchased the notes, the deed of trust to secure the payment of the notes also became his property. The State desired this instrument to be introduced in evidence. The court permitted the State to place E. G. Senter, defendant's attorney on the stand, and question him in regard to this deed of trust, and learn through him that the deed of trust was then in possession of Mrs. Downing, defendant's wife. The defendant had not summoned Mrs. Downing, but the court, at the instance of the State, upon learning that the paper was in the possession of defendant's wife, caused a subpoena *duces tecum* to issue commanding her to appear in court and bring the deed of trust. When she appeared in court and stated that she had not brought the deed of trust, the court refused to permit defendant's counsel to consult, or to permit her to consult with any attorney, but instructed that if she did not at once surrender to an officer of the court the deed of trust he would adjudge her guilty of contempt and commit her to jail until she did it. Getting possession of the paper in this way, it was turned over to State's counsel, and they were permitted to introduce it in evidence, and in the concluding argument of State's counsel the following argument was used as shown by bill of exception: "Senter gave the deed of trust to Mrs. Downing, and she was brought into court and made to dig it up." The court in qualifying the bill says the language as he understood it was: "We had a time getting possession of this deed of trust. They had it, and would not give it up till the court got after them and made them dig it up." Objections were raised to all these proceedings, and they are presented to this court in a number of bills of exception. We have grouped them, as they all relate to the same matter. When the defendant was on the stand he might have been questioned about this deed of trust, and if he declined to produce it, the jury left to draw such inference as they might from the incident. Or the State's counsel could have sent to Titus County and secured a certified copy of the instrument and introduced that in evidence, but we do not think the law will permit the court to require the defendant, his attorney, or defendant's wife to produce testimony against the defendant that the State may introduce it.

Our Code of Criminal Procedure provides: "Article 775: The husband and wife may in all criminal actions be witnesses for each other, but they shall in no case testify against each other except in a criminal prosecution for a criminal offense committed by one against the other."

Again, in article 774, it is declared: "Neither husband nor wife shall in any case testify as to communications made by one to the other while married," etc,

And in article 773 it is provided: "An attorney-at-law shall not disclose a communication made to him by his client during the existence of that relationship nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship."

Mr. Senter, attorney for defendant, when placed on the witness-stand by the State, objected to answering the questions propounded on the ground that all papers that had come into his possession and all facts that had come to his knowledge, did so by reason of his relationship as attorney for defendant. Under threat of being fined for contempt, he was over objection required to answer the questions. When the wife was sent for by the court and placed on the stand, objections were made and exceptions reserved, but the court required her to answer the questions and deliver up the papers, that they might be used as evidence against her husband. If there was no other error in the record we would reverse this case because of this proceeding. The remarks of counsel above quoted were highly improper, whether we take the attorney's version or the version of the court.

7. Appellant also complains of the action of the district attorney in the following particulars, in bill of exceptions:

"While Oscar Calloway was on the stand as a witness for the State, and was being asked about his trip to Mt. Pleasant to investigate the validity of these two notes in controversy, he was asked by district attorney as to the result of his investigation of the value of the land, to which question defendant objected, whereupon said district attorney declared:

"'We want to prove that the land was absolutely inadequate (referring to the land described in the deed of trust executed by J. B. Miller to Neely and Stephens, and about which all the evidence shows defendant herein had nothing to do); we want to prove that the whole thing was a swindle,' said the district attorney, which last remark by said district attorney was objected to by counsel for defendant as being prejudicial error, whereupon the court instructed the jury not to consider same, and instructed the district attorney not to make such remarks again.

"Again, while Oscar Calloway was on the witness-stand for defendant, said district attorney asked, 'Who is J. B. Miller?' (said Miller not being a witness in this case, and there being no evidence that defendant Downing ever saw or heard of him till he bought these notes with his name on them). To which question witness answered: 'J. B. Miller is the best definition I could possibly put to him—was hung in Oklahoma a while back.' To which remark and effort of district attorney to bring said Miller's personality to the front in this case defendant, by his counsel, excepted, and the court again instructed said district attorney not to ask such questions, and instructed the jury not to consider same.

"District attorney, while examining R. O. Fields, of Ft. Worth, witness for defendant, after having asked said witness if he knew J. B.

Miller, and said witness having stated that he had one transaction with him, but no other, and that he became acquainted with him about a year before the matter now in controversy came up, said district attorney further asked: 'You knew his reputation in the State?' To which question the witness answered: 'I did not.' And said district attorney continuing: 'In Ft. Worth—for being a rascal?' To which question defendant by his attorney excepted as being continued effort on the part of said district attorney to impress the jury with the idea that this witness and all other witnesses of defendant were in league, by such question, without the shadow of an explanation to secure evidence to prove his insinuations (witness answering in the negative to this question). The court then suggested: 'Don't refer to that; I think it an improper examination.' Whereupon said district attorney declared in the presence of the jury: 'I think it will be a circumstance to show this testimony is untrue; anybody that knew Miller would probably have questioned it.' To which remark the defendant by his counsel excepted, when said district attorney continued immediately: 'Well, it goes to the credibility of the witness.' To which last remark defendant again excepted and reserved a bill of exception (it is to be understood that defendant in each of the above instances where he excepted reserved a bill of exceptions, all said bills being here presented together). District attorney next asked, 'How long were you deputy sheriff,' and witness answering, 'Six or seven years,' said district attorney again asked:

"'Did you know J. B. Miller then?' To which last question defendant by his attorney again excepted, because same was a persistent effort to discredit this witness by insinuating questions about a disreputable man, as shown by the evidence, whom this witness had already stated he had only one transaction with (having bought a note of him once, and afterwards meeting him in person, but having bought a note, no other dealings with, and knew nothing personally of the man and his methods; said Miller not being a witness in the case or a party to it, and practically unknown to all the witnesses except Frank Adams, who had sold him a livery stable for the notes in question). The court again instructed district attorney not to refer to the reputation of the man again.

"The district attorney having asked witness Fields if he ever talked with said J. B. Miller about these notes, and said witness having answered that he never did (but stated that he had seen him probably five times in his life around Ft. Worth), asked said witness the last time he had seen him, and witness having stated about six months, further asked, 'Do you expect to see him again?' and witness answering he did not; said district attorney continuing, 'Not in this world, anyway.' To which last question the defendant by his attorney excepted, because same was prejudicial, uncalled for and irrelevant. And the court again instructed the jury not to consider same.

"The district attorney continuing, further asked: 'Didn't he (re-

ferring to Adams) call your attention to the fact that Miller was a notorious character (witness already having just stated that if Adams made any inquiry about Miller, at this time now inquired about, he did not remember it). And the court again said: 'I told you not to do that, Mr. Bishop.'

"To all of the foregoing remarks of said counsel for the State the defendant then and there, to each as made, excepted, and asked for a bill of exceptions, on the ground that same were unsupported by evidence, prejudicial, being made in the presence of the jury, and side-bar remarks tending to supply a want of evidence that defendant and Frank Adams, witness in the case, were mixed up with and connected with said J. B. Miller, and that they all, together with witness Fields, were in a conspiracy with said J. B. Miller, a notorious character, to defraud said Neely and Stephens."

Miller was not a witness in this case, and the conduct of the State's counsel was highly prejudicial to defendant, and upon another trial he will not engage in such conduct, but confine his investigation and testimony to whether the defendant gave the testimony alleged in the civil case, and was it true or false. Whether or not Adams or Miller, or both of them, are gentlemen or scoundrels, could not and would not be admissible to show this defendant's guilt or innocence.

8. The court also erred in permitting the witness Dunn to testify relative to the terms of the trade of cancellation and that the notes were to be canceled when they were delivered to Adams, as shown in bill of exception No. 18. Defendant was not present; he is not shown to have had any knowledge of these matters at the time of the purchase of the notes, and the testimony is inadmissible in this case for any purpose.

There are a number of other matters complained of, but taking the disposition of those already decided herein, we do not think the errors will occur in another trial. The defendant is charged with perjury, and testimony tending to show whether he made the statement, and if he made it, was it false, and facts showing the materiality of the statement, ought to limit the bounds of the investigation.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied April 19, 1911.—Reporter.]