EDNA RIPPEY v. THE STATE.

No. 5555. Decided January 21, 1920.

Rehearing denied March 17, 1920.

**1.—Burglary—Evidence—Finding Stolen Property—Rule Stated.**

The finding of stolen property in the house or on the premisis of one accused of their theft is material and admissible, and the fact that at the time the property was so found, such accused was absent, and had given no permission to make the search, would be immaterial; and the controversy as to the identity of such property can only affect the weight of evidence.

**2.—Same—Evidence—Identity of Stolen Property.**

Where defendant was charged with burglary and the theft of certain sausage found in her house, there was no error in admitting testimony that the same was that of the alleged owner who had made a particular description of same before said identification.

**3.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions was defective in not setting out the facts which showed the alleged error in admitting testimony as to how a cer-

tain witness earned his living, etc., the same could not be considered on appeal.

#### 4.—Same—Charge of Court—Alibi—Sufficiency of the Evidence.

Where, upon trial of burglary, the evidence sustained a conviction there was no error in refusing a requested charge that defendant was not guilty nor in not submitting a charge on alibi under the evidence in the instant case. Following: Crane v. State, 57 Texas Crim. Rep., 476, and other cases.

#### 5.—Same—Principals—Charge of Court.

Where, upon trial of burglary, the evidence raised the issue of principals there was no error in the court's submitting a charge thereon.

#### 6.—Same—Sufficiency of the Evidence.

Where, upon trial of burglary, the evidence sustained the conviction under a proper charge of the court there was no reversible error.    .

#### 7.—Same—Rehearing—Right of Search—Rule Stated—Collateral Issue.

Where upon motion for rehearing appellant contended that the State had no right to introduce evidence that certain property identified as being taken from the alleged burglarized house was found in the house of appellant while she was absent, because the search therefor was without her consent and without authority of law, held that the trial court properly refused to stop the trial and investigate the collateral issue as to how this evidence was obtained. Following: Adams v. New York, 192 U. S., 585, and other cases. Distinguishing: Weeks v. U. S., 232 U. S., 383.

#### 8.—Same—Rule Stated—Demonstrative Evidence.

There is a vast difference between demonstrative evidence, which consists of those things whose undeniable ownership and property is in the accused, and which are not directly connected with the crime under search, and such evidence when the same consists of the finding of stolen property, etc., or other evidence directly tending to identify the crime, or connect the criminal therewith.

#### 9.—Same—Rule Stated—Search and Seizure—Stolen Property.

It is permissible under the law to search for and seize stolen property and is in no sense compelling one to give evidence against himself when the same is a reasonable search or seizure under color of law, and in any event the finding of stolen property · is admissible in evidence if it affects the accused. Following: Jones v. State, 214 S. W. Rep., 322, ond other cases. Distinguishing: Ex parte Wilson, 39 Texas Crim. Rep., 630.

#### 10.—Same—Case Stated—Search and Seizure.

Where, upon trial of burglary, the defendant did not even make claim of ownership, or right of possession to the alleged stolen property which was found in her house, there was no error in admitting evidence that the alleged stolen property taken from the burglarized house was seized in her house after a search therefor, although this was without her consent and in her absence.

#### 11.—Same—Sufficiency of the Evidence—Breaking—Entry.

Where, upon trial of burglary, the evidence with reference to the breaking and entry of the house by means of certain keys of which de-

fendant possessed herself and the taking of the alleged stolen goods, was sufficient to sustain the conviction, there was no reversible error.

**12.—Same—Possession—Recently Stolen Property—Rule Stated.**

It has been held by this court that the finding of a part of recently stolen property in possession of the accused supports a conviction of taking it all. Following: Rose v. State, 52 Texas Crim. Rep., 155, and other cases. And that such possession of recently stolen property obtained from burglarized premises will support a conviction if not properly explained.

Appeal from the District Court of Potter. Tried below before the Hon. Henry S. Bishop, judge.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*L. C. Barrett* and *Veale & Lumpkin,* for appellant.—Cited: Cases in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant seeks to secure the reversal of a conviction in the District Court of Potter County, Texas, for the offense of burglary, her punishment being fixed at two years confinement in the penitentiary.

It appears from the record, that one J. W. Cantrell, was superintendent of the county poor farm of Potter County, in 1918 and 1919, and as such had the care, control, and management of the buildings and property there located. It further appears that appellant was an inmate of said Poor Farm during the year 1918, and that in December of said year, and during her stay, some thirteen hogs were killed by Cantrell; and the shoulders and hame salted down, and certain pure hog-meat sausage was ground, sacked, and hung up by him in the meat-house. The whereabouts of the keys to the said meat-house were shown to have been known to appellant. Afterward, certain of the hams, shoulders, and sausage having disappeared, the finger of suspicion was pointed at appellant, and also one Richard Fitzgerald, commonly called Dick Fitzgerald, who seems to have occupied the same dwelling as appellant,—and they were arrested; and, without a writ from any court, or any permit from appellant, search was made of the house inhabited by Edna Rippey and said Fitzgerald, which resulted in finding therein certain sausage, in a certain sack, which was tied at the end with a certain knot. On this trial, Mr. Cantrell identified with more or less certainty, the sausage and the sack or cloth, and especially the knot, as being his property, which, together with four hams, and two shoulders, had been surreptitiously taken from said meat house without his knowledge and consent.

One Hollobaugh testified for the State that some time in January or February, 1919, he had breakfast at the house with appellant and Fitzgerald, and one Claude Blackburn, who was staying at said house; that appellant made the biscuit, and Fitzgerald fried the ham and eggs, which formed a part of said breakfast; that in a con-- versation had at the time, Blackburn asked appellant if the hams were all eaten, and she said they were not, but that when they were, she knew where there were plenty more, and where the keys were kept; and then she told about her and Dick going to the county farm, and how she went and got the keys and got the meat and took it out to the buggy, and how she heard a noise and thought Mr. Cantrell was shooting at her, and ran; but Dick called her back and told her it was only a horse making a racket at the barn.

Miss Given, for the State, testified that about January 25, 1919, appellant and Dick Fitzgerald took dinner at her father's house, and some time while there, Dick said that appellant was a good runner, or a race-horse, or something of that kind, and they, referring to appellant and Fitzgerald, then told of being somewhere in the country, the exact place being undisclosed, and that they were getting some hams, and heard a horse kick; upon which appellant got scared and ran, and dropped the hams, and, as witness thought, Dick went and got them. This witness did not think anything especially of the statement at the time, and did not gather therefrom that the parties had been out stealing hams.

One Blackburn swore that in February, 1919, he went to live at appellant's house, and that he saw some country hams there; that appellant told him that she and Dick Fitzgerald had gotten them from the county farm. She did not say whether they had gotten them in the daytime or at night. She told him that she heard a horse kicking, and dropped the hams and ran. Both Fitzgerald and appellant told him about their going out to the farm and getting these things.

Both Blackburn and Hollobaugh admitted that they were under indictment for felonies.

For the appellant she was her own and only witness. She testified that she was at the county farm when the meat was put up; and helped with it, and knew where the keys were kept, but denied taking any of the meat, and specifically denied the statements attributed to her by the other witnesses; and denied being at the county farm at any time after December 13, 1918. She admitted that there were hams and sausage at her house, but denied knowing whence they came, except she said that Blackburn told her that Hollobaugh had brought same there.

We have given practically all the material evidence in the case.

Appellant objected to the testimony as to finding the sausage at her house, because the same was found in her absence, and the

search was made without her consent, and, as she claims, in violation of law. The objection is without merit. The doctrine of *res inter alias acta* has no application. The finding of stolen property in the house or on the premises of one accused of their theft is material and admissible, and the fact that at the time the property was found, such accused was absent, and had given no permission to make the search, would be immaterial. Nor would the fact that there might be some controversy as to the identity of the property, affect the question of its admissibility; same could only go to its weight.

We can see no error in permitting the witness Cantrell to examine, in the presence of the jury, the sausage found in appellant's house, and also to testify that it was his, and had every appearance of the sausage taken from his meat-house. He described the kind of cloth used in making the sacks in which the sausage was placed, and also particularly described the knot which he tied in the end of each sack,—the sausage exhibited to the jury being in the kind of cloth identified by him, and being tied with said knots.

Appellant has a bill of exceptions to the question asked her while on the witness stand, as to how Dick Fitzgerald earned his living while he stayed with her, to which the witness answered over objection, "I do not know." There might be many conceivable situations in which said question might be very material. The bill reserved thereto wholly fails to disclose the surrounding facts, or to set forth any reason why the overruling of the objection to said evidence was erroneous. It is well settled that a bill of exceptions must be complete within itself, and must exhibit such facts as will show the error complained of.

The court did not err in refusing appellant's request for a peremptory instruction of not guilty; nor do we think any special defense of alibi was relied on or supported by any proof. The mere fact that the accused denied her guilt, and stated that she was not at the county farm after December 13th, would not necessarily warrant a charge on alibi. She did not attempt to state where she was on the date of the alleged burglary on January 14, 1919, nor to show such fact by any evidence whatever. Neither was any special charge asked presenting this theory to the jury. Crane v. State, 57 Texas Crim. Rep., 476; Williams v. State, 60 Texas Crim. Rep., 453; Woods v. State, 80 Texas Crim. Rep., 73, 188 S. W. Rep., 980.

The testimony of both Blackburn and Hollobaugh showed, if true, the presence of Dick Fitzgerald, and his participation in whatever was done by appellant in connection with said burglary; also, the sausage claimed by the State to have been taken from the burglarized house, was found in the building occupied by both appellant and said Fitzgerald, and we do not think the court erred in submit-

ting the law of principals, as applied to said Fitzgerald and appellant.

None of the other matters complained of present any question which seems to call for any discussion, except that it is urged the evidence does not make out a case of burglary against appellant. Having already set out at sufficient length the evidence, we will not further reproduce same. Appellant admits in her brief that if the witness Hollobaugh can be believed, the case against her is made out. The trial court submitted the question to the jury as to whether this witness was an accomplice, and no serious objection was made to said charge. It is not claimed that Miss Given was an accomplice, or in any way connected with the alleged crime. Her testimony, and that of Mr. Cantrell, amply corroborates that of the accomplices. Nor is there any doubt in the record but that the entry, if any, was made by the use of the keys, which would be the use of sufficient force as applied to the building, to constitute burglary, under our laws.

Finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

March 17, 1920.

LATTIMORE, Judge.—Appellant files a vigorous motion for rehearing, attacking, in the first instance, that part of our opinion, wherein we upheld the right of the State to introduce evidence that certain sausage, identified as being taken from the alleged burglarized house, was found in the house of appellant while she was absent, it being urged that the search of her house was without her consent, and without authority of law, and that, therefore, said evidence was inadmissible. That we may be more clearly understood, we will state that when the owner of the alleged stolen property was on the witness stand, and had testified to the loss of certain meat, he was asked by the State, whether or not he had searched the premises of Mrs. Rippey, for his missing hams, shoulders, and sausage. Laying her predicate for objection, appellant had him state that when such search was made, she was not present, and that he did not have a search warrant; and that appellant had been arrested the night before, and was then in jail. Thereupon, she objected to the question and its answer, because the same would be hearsay, and because such search took place in her absence; and further, because it would be compelling her to furnish testimony against herself, and same was not obtained in a legal manner. These objections the court overruled, and the witness testified to finding in appellant's house, certain sausage, encased in a certain kind of

cloth covering, tied with a certain knot, all of which witness thought was his property, and a knot tied by himself. As presented before this Court, appellant urges that such evidence was inadmissible, because said sausage was obtained in violation of Sections 9 and 10, of our Bill of Rights, which guarantee to our citizens, security against unreasonable searches and seizures, and also guarantee against being compelled to give evidence against themselves; and, further, appellant objects because the same was in violation of the Fourth and Fifth Amendments of the Federal Constitution.

As setting forth the views of the Supreme Court of the United States, and as authority for her contention, appellant relies on the case of Weeks v. United States, 232 U. S. Rep., 383. We have again examined this, and the other authorities cited, and in view of the limited discussion indulged in by us in the original opinion on this point, we will further refer to them.

The question in the Weeks case, was the right of the Federal officers to withhold from the accused his own private letters and papers, for the purpose of using same as evidence against him, which documents the officers had obtained in a search of his house while he was in custody. Upon his application for an order directing the return of said papers, the Supreme Court of the United States held that said order must be granted, and the papers returned to him. Omitting any discussion of the correctness of that decision as applicable to the facts of that case, we note that it holds directly against appellant, as far as any application is here sought. Differentiating that case, the Supreme Court uses this language:

"Nor is the case one of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained—of which we shall have occasion to treat later in this opinion. Nor is it the case of a burglar's tools or other proofs of guilt found upon his arrest within the control of the accused."

Inasmuch as the instant case before us, is of the kind thus distinguished, the Weeks case effectually excludes it.

Further discussing some decisions cited by the Government, the learned court refers to the cases of Adams v. New York, 192 U. S. 585; People v. Adams, 176 N. Y., 351,—both being cases in which evidence of guilt obtained by officers searching in the absence of the accused, was held admissible; and apparently approving the doctrine of said cases, the court proceeds as follows:

' "The underlying principle obviously is that the court, when engaged in trying a criminal cause, will not take notice of the manner in which the witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence.' This doctrine thus laid down by the New York Court of Appeals and approved by this Court, that a court

will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent testimony, has the sanction of so many state cases that it would be impracticable to cite or refer to them in detail. Many of them are collected in the note to State v. Turner, 136 Am. St. Rep., 129, 135, et seq., After citing numerous cases the editor says: 'The underlying principle of all these decisions obviously is, that the court, when engaged in the trial of a criminal action, will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are material and properly offered in evidence: People v. Adams, 176 N. Y., 351, 98 Am. St. Rep., 675; 68 N. E., 636; 63 L. R. A., 406. Such an investigation is not involved necessarily in the litigation in chief, and to pursue it would be to halt in the orderly progress of a cause, and consider incidentally a question which has happened to cross the path of such litigation, and which is wholly independent thereof.'

"It is therefore evident that the Adams case affords no authority for the action of the court in this case, when applied to in due season for the return of papers seized in violation of the constitutional amendment."

So it is at once apparent that the rule in the Weeks case has no application to a case such as is before us, in which objection was made during the trial that evidence offered was not legally obtained, but was obtained by illegal search and seizure.

If we apply the rule of the Adams cases, approved in the Weeks case, *supra,* it would be a sufficient reply to appellant's contention to say that the instant case was on trial, and evidence was offered, to which the objection was made that such evidence was illegally obtained, and that the court properly refused to stop the trial and investigate the collateral issue, as to how the evidence was obtained. However, we do not think the rule in the Weeks case applicable from any point of view. There is a vast difference between demonstrative evidence, which consists of those things whose undeniable ownership and property is in the accused, and which are not directly connected with the crime under search, and such evidence when same consists of the finding of stolen property, the weapon or tools used, or other evidence directly tending to identify the crime, or connect the criminal therewith. We might further observe that it is permissible under all our laws, to enter houses to search for and seize stolen property, the same not being an unreasonable search or seizure, and in no sense compelling one to give evidence against himself. When such entry is over objection, same can only be allowed when in accordance with prescribed forms, such as search warrants, etc.; and any person undertaking such entry without color of law therefor does so at his peril, and at risk even of life; but such entry, if without force, is not made penal by any law, and when by reason thereof, the finding of stolen property

results, the fact of such finding is provable, and if it affect the accused, he may not avoid this merely by asserting that he gave no consent to such entry.

In the Weeks case the property taken was admittedly the private property of the accused. In the instant case, the property found in appellant's house was not her own, but, on the contrary, while a witness, she expressly disclaimed such ownership, and said that the property was brought to her househ by the witness Hollobaugh.

We have many well settled rules of evidence in this State similar to the one governing the introduction of the evidence objected to, which seem to us to make it no longer an open question; and for this reason we did not discuss it in our original. One arrested and searched may not complain that what was found on his person was used in evidence against him. Jones v. State, 214 S. W. Rep., 322; Renfro v. State, 42 Texas Crim. Rep., 393. Property recently stolen, and found in the possession of the accused, is admissible against him, regardless of whether he was or was not under arrest when the same was found. Burrill's Circumstantial Evidence, 450; Hooton v. State, 53 Texas Crim. Rep., 6; Lynne v. State, 53 Texas Crim. Rep., 376. The statements of the accused, while under arrest, which are found to be true, and which aid in establishing his guilt, are admissible under numerous authorities; also, that while under arrest, he may be compelled to place his feet in certain tracks, or a shoe may be removed from his foot and placed in certain tracks, for identification. Thompson v. State, 45 Texas Crim. Rep., 192; Guerrero v. State, 46 Texas Crim. Rep., 447. Recently after the commission of a crime, evidence of finding matters in appellant's possession, which demonstrate his guilt, is admissible, whether he be under arrest or not. Leeper & Powell v. State, 29 Texas Crim. App., 63; Wright v. State, 56 Texas Crim. Rep., 356.

Appellant also refers to Wharton's Criminal Evidence, Vol. 2, Sec. 518-f, which asserts that some State courts are indifferent to the methods used to obtain demonstrative evidence, but that a different rule obtains in the United States Courts. We observe, however, that Sec. 518-g, of Mr. Wharton's work, referred to, lays down the following rule: "It is not ground for exclusion of an article of demonstrative evidence, that it was taken from the possession of the accused, even though it was forcibly taken from him, or that it was obtained by illegal search and seizure." Many authorities are cited in support of this text. We also quote Section 518-e, of said work:

"ARTICLES TRACED TO THE ACCUSED OR CONNECTED WITH THE OFFENSE, WHEN ADMISSIBLE:—On the same principle as the admission of the instrument or means connected with the offense, to illustrate the same, articles of personal property in the possession of the accused at the time of the homicide or other criminal offense against him, or personal property in possession of the

accused at the time and connected with the offense, either to iden-
tify the offense, the deceased, or the accused, are properly admis-
sible as a part of the demonstrating and illustrating evidence.''

Many authorities are also cited in support of this text.

No authorities are cited by appellant, nor do we believe any
can be found, which hold inadmissible against the accused, the
fact of finding on her premises, and inferentially in her care and
control, the substantive evidences of · her crime, such as the alleged
stolen property.

Ex parte Wilson, 39 Texas Crim. Rep., 630, is cited by appellant
in this same connection. Examining said authority, we note that
Mr. Wilson was released by this Court, upon *habeas corpus,* from
confinement, under an order of the District Court holding him in
contempt, because he refused to answer a grand jury seeking to
compel him to divulge the whereabouts of a certain bill of sale,
which disclosure, as admitted by the State's attorney, would have
been incriminating to Mr. Wilson.

The Downing case, 61 Texas Crim. Rep., 519, 136 S. W. Rep.,
471, is also cited, and this latter case appears to be one wherein
this Court held it erroneous to compel the attorney for appellant,
and the appellant's wife to testify against him, and to deliver to
the State's attorney, private papers of the appellant. The opinion
in the Downing case is based specifically upon the fact that Articles
773, 774 and 775, of our Code of Criminal Procedure, forbids making
the wife, or the attorney, in most instances, a witness.

There seems to us no possible dispute as to the correctness of
the conclusion reached in either the Wilson or the Downing cases.
Neither of said cases discusses the proposition involved in a search
for stolen property, or the instruments or tools used, or other demon-
strative evidence tending to connect the accused with the offense.
In the instant case, appellant did not even make claim of ownership,
or right of possession to the alleged property, and while she might
have objected to an entry into her house for the purpose of search
and seizure until proper legal forms were 'complied with, yet if
stolen property was found in said house, we find nothing in any of
the authorities cited which would hold that such evidence was in-
admissible.

It is also urged that we erred in holding the evidence sufficient
to support the verdict. In this connection, it will be noted that the
trial court charged on circumstantial evidence, and that the record
shows that appellant was familiar with the premises alleged to
have been burglarized; that she was present, and helped put up
the sausage, with other meat, when the same was packed away, and
knew where it was kept; that some weeks thereafter, the meat was
missing from the place where appellant had assisted in placing the
same; that she told witnesses, who testified, in substance that she
had gone out into the country with Fitzgerald, had gotten the meat.

and had been frightened by the sounds she heard, which she stated to one of the witnesses she believed to be Mr. Cantrell shooting at them. It further appears from said record that she stated where she got the meat, and that she knew where the keys were kept; that when this meat was gone, she was going to get some more; and that a part of the meat claimed to have been stolen was found in her house and identified. We think these facts of sufficient weight to justify the jury's verdict.

As to appellant's contention that there was no evidence of a breaking, it will be a sufficient reply to state that if the evidence in the record be true, which is a question for the jury, it appears that appellant herself admitted that on the night in question, she got the keys to the smokehouse, and went and got the meat, and that the owner of the house testified that he kept it locked.

It will not be necessary to convict of burglary, to show that appellant took all of the missing property. It has been held in this State that the finding of a part of recently stolen property in possession of the accused, would support a conviction of taking it all. Jack v. State, 20 Texas Crim. App., 656; Rose v. State, 52 Texas Crim. Rep., 155. It has also been frequently held that the fact of possession of recently stolen property, obtained from burglarized premises, and such possession not satisfactorily explained, will support a conviction for burglary. In this case there was such evidence, and also additional testimony of statements amounting to confessions, made by the accused.

Being unable to agree with the contentions made by appellant in this motion, the same will be overruled.

*Overruled.*