### M. C. Teague v. The State.

No. 15234.   Delivered April 27, 1932.

The opinion states the case.

Thomas B. Ridgell, of Breckenridge, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

CALHOUN, Judge.—The offense, murder; the punishment, thirty-five years in the penitentiary.

Appellant and deceased had been for some time living together as man and wife without having been in fact married. The state's case is made to depend mainly on the dying declaration of the deceased. The dying declaration in effect was as follows: "My name is Kitty Gordon. I am 22 years old. I am single. I have never been married. I have been living with M. C. Teague since last June. He had been gone since last Tuesday and came back this afternoon. He had beat me and hit me several times before tonight. I was going to leave here today. I had already quit him. When he came in he said to come to the room. He cursed me and knocked me down on the bed two or three times. He wired me Friday for money and I didn't have it to send him. He then

continued to curse me and told me to go to Wink and get his clothes. I already had mine. I packed my suit case and hid it. I told the landlady, who was hard of hearing, when I left and he overheard the conversation and he came in and said, 'you are not going to quit me, and if you do you won't look like anything.' He hit me then and pulled his pistol and shot me. I was sitting on the bed when he shot me. He had threatened to shoot me a lot of times if I ever left him."

Said statement was made by the deceased to Lee Billberry, who was county attorney in Ward county at the time. This statement was taken on the same evening of the day deceased was shot and she lived about two weeks thereafter. There was some other evidence on the part of the state as to the hearing of the shot and the arrest of the appellant, but no one outside of the appellant and the deceased saw the shooting.

It is the appellant's defense that the shooting was an accident. He testified that he was very much infatuated with the deceased and intended to marry her; that when he returned to the place where the deceased was, he found her under the influence of intoxicants; that she tried to take the gun he had on, an automatic pistol, and it was accidentally fired, and there was no intent or attempt on the part of the appellant to shoot the deceased.

It was shown that after deceased had made the statement offered in evidence as a dying declaration, she got better, during which time the appellant regularly attended her in the hospital and was very attentive to her and no animosity was shown to have existed in the mind of the deceased towards the appellant. Several witnesses in behalf of the appellant testified that after the dying declaration was made before her death that the deceased had stated to several witnesses that the shooting was an accident.

The testimony of the witness Beckham was to the effect that he saw the deceased in the hospital about 7 o'clock following the shooting that afternoon; that she also made a statement to him, he being justice of the peace, and he testified that in the statement she made to him she stated the shooting was accidental.

In rebuttal, the state offered the testimony of a nurse in the hospital where the deceased was being treated prior to her death to the effect that the deceased told her a short time before her death that appellant came in in a rage, cursing and swearing, and she tried to defend herself, and he knocked her down on the bed and shot her.

Appellant, by bill of exception, complains of the trial court admitting in evidence the statement introduced as a dying declaration signed by the deceased upon the ground that no proper predicate had been laid for its introduction and for the further reason that it contained collateral matters which were improper and immaterial and calculated to prejudice the jury and not relating to the transaction, all of which makes it incompetent and

inadmissible. Appellant made the further objection that certain matters in said statement were not pertinent to the immediate transaction and were not statements as to what happened at the time and were inadmissible and incompetent and prejudicial. The bill shows that the court overruled said objection and permitted all of said statement to be read in evidence before the jury. Appellant also, by special instruction, requested the court to withdraw from the jury that part of the statement admitted as a dying declaration which related to former grudges, quarrels, and statements that the defendant had before struck, cursed, and abused the deceased, and all of said statement that refers to former conduct of the defendant towards the deceased. The court also refused to give such special requested instruction, to which appellant excepted.

Before the introduction of said statement, the state had put the witness Lee Billberry on the stand, and from his testimony and that of the hospital doctor, we think that a proper predicate was laid for the introduction of said statement as a dying declaration.

We believe that portion of the statement which stated that the appellant had beat her and hit her several times before that and wired her Friday the week before for money and that she didn't have it to send him and he had threatened to shoot her lots of times if she ever left him should not have been admitted over the objection of the appellant. We do not believe it was permissible to prove these facts as part of the dying declaration. "A dying declaration is confined to the immediate facts of the homicide, and it is error to admit as part of the dying declaration, statements of declarant as to what occurred on former occasions or meetings. Section 1865, Branch's Ann. P. C.; Warren v. State, 9 Texas App., 629, 35 Am. St. Rep., 745; Thomas v. State, 11 Texas App., 317; Wakefield v. State, 50 Texas Crim. Rep., 125, 94 S. W., 1046; Winfrey v. State, 41 Texas Crim. Rep, 538, 56 S. W., 919; Hinton v. State, 65 Texas Crim. Rep., 408, 144 S. W., 617; Simmons v. State, 109 Texas Crim. Rep., 157, 3 S. W. (2d) 449.

What the effect of this testimony would be before the jury is more or less speculative, but the testimony itself is of such character as could reasonably be hurtful and having been excepted to calls for reversal of this case.

Complaint is also made of the action of the trial court in allowing the state to prove that some time before appellant had been charged with a felony in Oklahoma. This question and the answer thereto were withdrawn by the court from the consideration of the jury, and therefore we do not think reversible error is shown.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judge of the Court of Criminal Appeals and approved by the Court.