M. C. TEAGUE v. THE STATE.

No. 15864. Delivered March 29, 1933.
Rehearing Denied May 24, 1933.
Reported in 60 S. W. (2d) 244.

The opinion states the case.

*Martin & Shipman,* of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of sixteen years.

The indictment charges that the appellant shot and killed Kitty Gordon.

A report of the former appeal will be found in 49 S. W. (2d) 456.

Testifying in his own behalf, the appellant said that at the time of the tragedy he was connected with a drug store in Wink, Texas; that he and the deceased lived together in Howard county, Texas; that from there they went to Wink and set up housekeeping; that it was their intention to get married if Kitty Gordon could get a divorce. At the time Kitty Gordon was shot in the Wyoming Rooms in Pyote, Texas, the appellant had just returned from Grooby, Texas, a town about 100 miles southeast of Pyote. The town of Pyote was between Grooby and Wink. Appellant left Wink on Wednesday afternoon and went to Grooby. On his return from Grooby to Wink, he and his companion passed through Pyote. Having traveled all day, his companion Jones suggested they stop somewhere and get a drink. For that purpose they went to the Wyoming Rooms. Jones knew the lady who kept the Wyoming Rooms. Shortly after they entered the building, Kitty Gordon appeared in the hall. The appellant recognized her and called her. They met and embraced each other. Appellant said: "What are you doing here?" She said: "Why didn't you come back last night like you promised you would?" Appellant said: "You know I was off trying to make a dollar. What are you doing here?" After some conversation, she said she was going home with

him, and he said, "No"; that she could go back on the bus when she got sober. She had been drinking and insisted that she go back with him. The argument culminated in her effort to seize the appellant's pistol in his belt. In the scuffle over the pistol, it fired and wounded her.

In bill of exception No. 2, the appellant complains of the refusal of the court to permit him to introduce a part of the dying declaration of the deceased. After stating that she had been living with the appellant since June, there appears in the dying declaration the following: "He had been gone since last Tuesday, and came back this afternoon."

The refusal of the court to permit the introduction of the statement mentioned is relied upon as reversible error. The particular reason upon which appellant contends that the testimony was admissible is that the state's witness, Mrs. Nichols, testified that the deceased had been at her home at least ten days because she had paid her second week's room rent.

The portion of the dying declaration introduced by the state is as follows: "After being duly warned that I will die, and knowing I am about to die, I make this voluntary declaration:

"My name is Kitty Gordon. I am 22 years old. When he came in he said to come to the room. He cursed me and knocked me down on the bed two or three times. He then continued to curse me and told me to go — Wink and get his clothes. He came in and said, 'You are not going to quit me, and if you do you won't look like anything.' He hit *he* then and pulled his pistol and shot me. I was in the room in the Wyoming a couple of doors from the landlady's room sitting on the bed when M. C. Teague shot me.' I did not shoot myself. After hearing this statement read over to me, I voluntarily sign knowing the same to be the truth.

"(Signed) Kitty Gordon."

The position taken by the appellant is that the testimony of Mrs. Nichols tended to discredit his testimony which, by inference, implied that the meeting with the deceased at Pyote was accidental. It is thought that the appellant overstresses the importance of the testimony in question. So far as it goes, it coincides in substance with the appellant's testimony, namely, "I left Wink Wednesday afternoon."

From the appellant's testimony we also quote: "I was not mad at Kitty. Kitty was arguing with me about why I didn't come back the night before that."

On the former appeal, the appellant, in a bill of exception, objected to the introduction by the state of the purported

declaration of the deceased of which he now complains of the exclusion, namely, "He had been gone since last Tuesday, and came back this afternoon."

The reversal of the judgment on the former appeal was due to the reception in evidence of parts of the dying declaration, including that now under consideration and quoted above. Against the admissibility thereof it was urged that they referred to transactions occurring antecedent to the one resulting in the death of the deceased. Upon his contention on this appeal, appellant cites the following precedents: Temple v. State, 15 Texas App., 304; Ex parte Barber, 16 Texas App., 369; West v. State, 7 Texas App., 150; Walker v. State, 227 S. W., 308; article 725, C. C. P., 1925.

Whether the remark in question was admissible is not entirely free from doubt. A decision of the question does not seem essential to the disposition of the appeal, for the reason that there appears no substantial difference between the testimony of the appellant and the statement in question imputed to the deceased.

In overruling the appellant's motion for continuance made on account of absent witnesses, it is thought that the court did not abuse the discretion vested in him. Discussion of the matter is not deemed necessary.

The motion for new trial was properly overruled.

Finding no error, the judgment is affirmed.

*Affirmed.*

#### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We have examined appellant's motion for rehearing but are not led to believe our former disposition of the case was erroneous.

The motion for rehearing is overruled.

*Overruled.*